**Robert FLOWERS, Plaintiff-Appellant,**

v.

**CROUCH–WALKER CORPORATION, Defendant-Appellee.**

No. 76–1625.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 10, 1976.

Decided April 19, 1977.

Harold M. Brody, Chicago, Ill., for plaintiff-appellant.

John J. Henely, Chicago, Ill., for defendant-appellee.

Before CASTLE, Senior Circuit Judge, and TONE and WOOD, Circuit Judges.

CASTLE, Senior Circuit Judge.

Plaintiff brought this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* and the Civil Rights Act of 1870, 42 U.S.C. § 1981, alleging that the defendant Crouch-Walker Corporation ("Crouch-Walker") discharged him from a bricklaying job in February, 1972, on account of his race. The district court granted the defendant's motion to dismiss the action at the close of the plaintiff's presentation of evidence. Plaintiff appeals,[1] asserting *inter alia* that the court's holding that he was discharged solely for a nondiscriminatory reason was unsupported by the evidence. We reverse.

### I.

The evidence introduced at trial, apart from a joint exhibit, consisted entirely of the plaintiff's testimony. The evidence may be summarized briefly. Plaintiff, a black bricklayer, was first employed by Crouch-Walker as an apprentice bricklayer in 1968 while attending trade school. He worked steadily for the defendant from that time until his discharge on February 24, 1972. In that period, he worked on five construction projects for Crouch-Walker and received compliments on the quality of his work by the defendant's supervisory personnel. He became a journeyman bricklayer in May, 1971.

Plaintiff was transferred by Crouch-Walker to the construction site of the Standard Oil Building in Chicago on Monday, February 21, 1972, where he was assigned work by Paul Kolkau, a foreman for whom the plaintiff had never worked previously. About 20 minutes after plaintiff had begun work, Kolkau told plaintiff that two rows of blocks he had laid were high in relation to previous work and ordered him to take them down. Plaintiff redid the work. Later that morning, Kolkau examined plaintiff's tools and told plaintiff that one of them, a sledge jointer,[2] was slightly worn. Plaintiff borrowed a jointer from a friend to use for the rest of the day and purchased a new one that evening. Plaintiff was assigned an apprentice on his first day at the Standard Oil Building site, the only apprentice at the site. Plaintiff was responsible for supervising the apprentice's work, and the apprentice remained with him until his discharge.

Plaintiff continued working at the project without notable incident for three more days and was discharged at the end of the day Thursday. Kolkau told plaintiff there was a shortage of brick work on the job. Plaintiff later called John Crouch, whom he identified as president of Crouch-Walker, to ask why he had been laid off. After asking for and receiving some time to look into the matter, Crouch told plaintiff that the owners of the Standard Oil Building had not been satisfied with his work. Plaintiff was called back to work by Crouch-Walker in June, 1972, and worked for the defendant for another year and a half.

On cross-examination, plaintiff admitted that layoffs are normal and customary in the bricklaying trade, because the amount of work sometimes fluctuates over the period of a construction project. Plaintiff also admitted that at least three other bricklayers who worked at the Standard Oil Building site were black. However, plaintiff testified on redirect examination that he saw two new white bricklayers at the site on Friday, the day after he was discharged.

The trial record also included a joint exhibit which was identified as a record of the persons who worked at the Standard Oil Building site. The exhibit indicates that

---

**1.** This case was before us previously on appeal from a judgment in favor of the defendant. *Flowers v. Crouch-Walker Corp.,* 507 F.2d 1378 (7th Cir. 1974). In that decision, we reversed the judgment of the district court because the case had been assigned for trial before a magistrate in violation of sections 706(f)(4) and (5) of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–5(f)(4), (5).

**2.** According to plaintiff's testimony, a sledge jointer is a device for giving the mortar between blocks or bricks a smooth finish.

the two men whom plaintiff identified as having been transferred to the site the day after his discharge did work at the site sometime during the week when plaintiff was there. The exhibit also indicates that 12 persons worked at the site during that week, 13 persons worked there the following week, and 14 persons worked at the site the next week.

Crouch-Walker moved to dismiss the action at the close of plaintiff's presentation of evidence on the ground that the plaintiff had failed to establish a case of discrimination. The court granted the motion and asked the defendant to submit proposed findings of fact and conclusions of law. Defendant's proposed findings and conclusions stated that the available brick work at the Standard Oil Building site was reduced at the time plaintiff was discharged, that the plaintiff's work at the site was unsatisfactory and not of the quality of the work of the other bricklayers there, and that he was laid off in the face of the work slowdown solely because his performance had been unworkmanlike. The district court adopted the proposed findings and conclusions without change.

## II.

■ Plaintiff asserts on appeal that the evidence introduced below established a prima facie case of racial discrimination and that he has been denied a fair hearing on his claim under the standards set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In *McDonnell Douglas,* the Supreme Court established a specific order and allocation of proof in private non-class actions challenging employment discrimination.[3] If the plaintiff establishes a prima facie case of racial discrimination, the burden must shift to the employer "to articulate some legitimate, nondiscriminatory reason" for his action. *Id.* at 802, 93 S.Ct. at 1824. If the

employer meets its burden of proof in response to the prima facie case, the plaintiff must be afforded a fair opportunity to show that the employer's stated reason for his action was in fact pretext. Plaintiff submits that the defendant has not articulated a nondiscriminatory reason for his discharge and that, even if the defendant has done so, plaintiff has not been afforded a fair opportunity to show that the reason was pretext.

■ Putting aside for the moment the question of adequacy of proof, we cannot agree that the defendant has failed to articulate a nondiscriminatory reason for plaintiff's discharge. As discussed more fully hereinafter, plaintiff rests his charge of discrimination on the theory that he was discharged as a black to permit one or more white bricklayers to perform the same job. In his opening statement, defendant's counsel stated that plaintiff's own testimony would show that he was discharged in the course of a work slowdown because his work had been unsatisfactory at the Standard Oil Building site. The same reason for the discharge was set forth in the findings of fact and conclusions of law proposed by the defendant and adopted by the court. We hold that a relative inferiority of plaintiff's work at the Standard Oil Building site in the course of a work slowdown would constitute a nondiscriminatory reason for discharge sufficient to rebut the plaintiff's charge of discrimination. Moreover, there is nothing to preclude the defendant's reliance on evidence appearing in the plaintiff's case to establish a nondiscriminatory reason for his action. As the Ninth Circuit recognized in *Sime v. Trustees of California State University and Colleges,* 526 F.2d 1112 (9th Cir. 1975), *McDonnell Douglas* does not require a three-step "judicial minuet" of procedure under which the defendant must come forward with evidence if certain facts in plaintiff's case establish a

---

**3.** Although *McDonnell Douglas* specifically involved a Title VII action challenging an employer's refusal to hire, its principles have been applied to discharge cases, *Garrett v. Mobil Oil Corp.,* 531. F.2d 892 (8th Cir. 1976); *Potter v. Goodwill Industries,* 518 F.2d 864 (6th Cir.

1975), and to actions arising under section 1981, *Sabol v. Snyder,* 524 F.2d 1009 (10th Cir. 1975); *Long v. Ford Motor Co.,* 496 F.2d 500 (6th Cir. 1974). *But see Stevens v. Junior College District,* 548 F.2d 779 (8th Cir. 1977).

prima facie case of discrimination. *Id.* at 1114. The court held that, even if the plaintiff has met his initial burden, a motion for dismissal may be granted at the close of plaintiff's case under Fed.R.Civ.P. 41(b) if the defendant in turn has met its burden out of the mouths of the plaintiff's witnesses.

 Plaintiff argues that the granting of a Rule 41(b) motion under such circumstances deprives the plaintiff of his opportunity to show that the reason assigned for the action taken was pretextual. In some cases, that may be so. However, in *Sime,* the defendants articulated nondiscriminatory reasons for their action in argument on the Rule 41(b) motion, and the plaintiff did not then or at any other time assert to the trial court that she was entitled to show that those reasons were pretextual. The Ninth Circuit held that plaintiff was not entitled to reversal because she had not presented the procedural claim to the trial court in the first instance. In the instant case, plaintiff was informed of defendant's asserted justification for discharging him by the opening statement of defendant's counsel, and he was alerted then to the fact that defendant hoped to establish this justification by plaintiff's own testimony. The opportunity to show that defendant's asserted reason for discharging him was pretext therefore was available to the plaintiff in his case in chief. By failing to offer any proof on this point, he created a risk that his own evidence would establish the defendant's justification and would leave the burden of proof on himself at the close of his presentation of evidence. We therefore hold that plaintiff was not procedurally prejudiced by the granting of the Rule 41(b) motion.

In disposing of plaintiff's procedural claim, we have assumed that the evidence presented established a prima facie case of discrimination. We have thus anticipated the procedural question to permit an uninterrupted analysis of the evidence and to establish a framework for that analysis. Under our procedural holding, we are not limited in this appeal to the question of whether plaintiff's evidence created a prima facie case but must determine whether that evidence supported the defendant's justification.

### III.

 Plaintiff asserts that a prima facie case of racial discrimination was established by the following facts appearing in the record: (1) that the plaintiff was a member of a racial minority; (2) that he was qualified for the job he was performing; (3) that he was satisfying the normal requirements in his work; (4) that he was discharged; and (5) that after his discharge the employer assigned white employees to perform the same work. There is sufficient evidence in the record to support a finding with respect to each of these facts, and we agree that they create an inference of racial discrimination. The inference is not vitiated by evidence that certain other bricklayers at the site were black. Reducing the number of black employees in favor of white employees is no less unlawful than eliminating all black employees from a work force. *See Wallace v. Debron Corp.,* 494 F.2d 674 (8th Cir. 1974). Nor is the inference precluded by plaintiff's longterm work history with the corporate defendant. Plaintiff was discharged shortly after having been assigned to a new supervisor, Paul Kolkau, on whom the primary weight of suspicion falls in plaintiff's case. The defendant is liable as principal for any violation of Title VII or section 1981 by Kolkau in his authorized capacity as supervisor. *Ostapowicz v. Johnson Bronze Co.,* 369 F.Supp. 522 (W.D.Pa. 1973), *modified,* 541 F.2d 394 (3d Cir. 1976); *Tidwell v. American Oil Co.,* 332 F.Supp. 424 (D.Utah 1971).

 Crouch-Walker challenges the existence of the third fact on which the plaintiff bases his prima facie case, namely, that plaintiff was satisfying the normal requirements of his job. Some showing of satisfactory performance is necessary to raise an inference of discrimination in discharge of a racial minority member. *See Franklin v. Crosby Typesetting Co.,* 411 F.Supp. 1167, 1171 (N.D.Tex.1976). Attributing a dis-

charge to racial discrimination without any evidence that plaintiff was meeting normal job requirements would be unwarranted and unfair. Satisfactory performance is an ordinary prerequisite of continued employment, just as job qualification is an ordinary prerequisite to hiring. *Cf. McDonnell Douglas Corp. v. Green, supra.* However, the plaintiff need not, and indeed cannot, disprove as a cause of his discharge a source of dissatisfaction of which he is unaware. Accordingly, the employer's acceptance of his work without express reservation is sufficient to show that the plaintiff was performing satisfactorily for the purpose of shifting the burden of proof. Evidence as to the actual quality of his work would be necessary only if the employer rejected his work or accepted it, for example, under express condition that the quality be improved. In the instant case, although plaintiff's supervisor did criticize plaintiff's work on the morning of his first day at the site, his work as corrected and his work thereafter for three more days were accepted without express reservation. Until it is rebutted, this evidence supports a finding that plaintiff was meeting normal job requirements.

The defendant relies on the finding of the district court that plaintiff's performance was "unsatisfactory" and "unworkmanlike." First, we do not believe the court's finding actually reaches the question of whether the plaintiff established the third element of his prima facie case. The plaintiff need not show perfect performance or even average performance to satisfy this element. He need only show that his performance was of sufficient quality to merit continued employment, thereby raising an inference that some other factor was involved in the decision to discharge him.

The district court did not find that plaintiff's performance was so poor as to warrant his discharge in the absence of other factors. Instead, the court found that plaintiff's performance was inferior to the work of the other bricklayers at the site and that it consequently made him the prime candidate for discharge on the occasion of a work slowdown. This finding is not inconsistent with a determination that plaintiff's performance, taken by itself, was sufficient for the job. Second, even if we were to construe the court's finding as a determination that plaintiff was not meeting normal job requirements, we would be constrained to hold it clearly erroneous. The only competent evidence to support the finding is the fact that plaintiff had laid two rows of blocks improperly in his first 20 minutes at the site and the fact that he had carried a slightly worn sledge jointer on the first day. These errors were quickly corrected. A holding that, because of them, plaintiff's work was of insufficient quality to merit continued employment is inconsistent with the fact that the plaintiff continued to work for the defendant for three more days without criticism. It is also inconsistent with the fact that the defendant assigned an apprentice to the plaintiff for that period.

We therefore find in plaintiff's case an inference that some factor other than poor performance was involved in the decision to discharge him and, because of his testimony that white bricklayers were assigned to replace him, an inference that racial discrimination was a factor. Plaintiff's credibility was not challenged at trial. Accordingly, we hold that plaintiff met his initial burden of establishing a prima facie case of racial discrimination and that the burden was shifted to the defendant to establish a nondiscriminatory reason for the discharge.[4]

---

**4.** In the *McDonnell Douglas* setting, a "prima facie case" does not signify—as it does in some settings—that the plaintiff has merely fulfilled his duty of producing some evidence in order to be allowed by the judge to have a jury consider his case. *See Rehm v. United States,* 183 F.Supp. 157, 159 (E.D.N.Y.1960); *Jefferson Standard Life Ins. Co. v. Boogher,* 224 N.C. 563, 31 S.E.2d 771, 773 (1944); 9 J. Wigmore, Evidence § 2494(2), at 293–94 (3d ed. 1940). Instead, it signifies that the plaintiff has produced sufficient evidence to be entitled to judgment if the defendant fails to meet his burden in response. *See Stewart v. General Motors Corp.,* 542 F.2d 445, 450 (7th Cir. 1976); *East v. Romine, Inc.,* 518 F.2d 332, 342 (5th Cir. 1975); Wigmore, *supra,* § 2494(1), at 293. In this sense, the prima facie case is "equivalent to the notion of a presumption." *Id.*

Crouch-Walker contends that plaintiff's evidence disclosed such a reason. It relies on the district court's finding that plaintiff was laid off in the face of a work slowdown because his performance had been unworkmanlike and not of the quality of the work of the other bricklayers at the site. In reviewing this finding we are bound by the "clearly erroneous" standard of Fed.R.Civ.P. 52(a). However, two factors in the case justify a broad scope of review within the limits of that standard. First, the evidence at trial consisted almost entirely of the testimony of a single witness, whose credibility was not challenged. The basic facts of the case were not in dispute.

> [W]hen the factual determination is primarily a matter of drawing inferences from undisputed facts or determining their legal implications, appellate review is much broader than where disputed evidence and questions of credibility are involved.

*Yorke v. Thomas Iseri Produce Co.,* 418 F.2d 811, 814 (7th Cir. 1969), quoting *Mayo v. Pioneer Bank & Trust Co.,* 297 F.2d 392, 395 (5th Cir. 1961). *Accord, Apolskis v. Concord Life Insurance Co.,* 445 F.2d 31 (7th Cir. 1971). Second, the district court adopted without change findings of fact and conclusions of law prepared by the defendant after the action was dismissed. A critical view of a challenged finding is appropriate where, as here, the findings of fact and conclusions of law of which it is a part were not the original product of a disinterested mind. *Edward B. Marks Music Corp. v. Colorado Magnetics, Inc.,* 497 F.2d 285 (10th Cir. 1974), *cert. denied,* 419 U.S. 1120, 95 S.Ct. 801, 42 L.Ed.2d 819 (1975); *In re Las Colinas, Inc.,* 426 F.2d 1005 (1st Cir. 1970); *Roberts v. Ross,* 344 F.2d 747 (3d Cir. 1965); *Louis Dreyfus et Cie. v. Panama Canal Co.,* 298 F.2d 733 (5th Cir. 1962). *See United States v. El Paso Natural Gas Co.,* 376 U.S. 651, 656, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964).

On the basis of the evidence introduced by the plaintiff, the court's finding that plaintiff's work was not of the quality of the work of other bricklayers at the site cannot be sustained. The record is barren of any evidence indicating how plaintiff's work compared to the work of the others. "[C]omparative evidence lies at the heart of a rebuttal of a prima facie case of employment discrimination." *East v. Romine, Inc.,* 518 F.2d 332, 339 (5th Cir. 1975). The court's finding presumes that the other bricklayers did not commit errors of the same degree of seriousness as those admitted by the plaintiff. Rebuttal of a prima facie case of racial discrimination must rest on a more solid footing than a presumption that the favored employees were free of fault. *Id.*

The record also does not support the court's finding that a work slowdown occurred at the time of plaintiff's discharge. Plaintiff did admit that fluctuations in available work sometimes occurred over the course of a construction project. Plaintiff also testified that Kolkau cited a work slowdown as the reason for his discharging plaintiff. However, the finding of a work slowdown is inconsistent with plaintiff's testimony that he saw two new white bricklayers at the site the next day, and that testimony remains unrebutted. The joint exhibit appears to corroborate plaintiff's testimony, and it suggests that the workload if anything was increasing at the time of his discharge. We are therefore left with a "definite and firm conviction" that a mistake was committed in this finding. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 123, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969).

Because the evidence does not establish that plaintiff was laid off in the face of a work slowdown because his work was inferior, Crouch-Walker's articulated reason for discharging the plaintiff has not been proved. Plaintiff's prima facie case of racial discrimination therefore remains unrebutted. The district court found as an ultimate fact[5] that plaintiff was not dis-

---

5. Our review of this finding is not bound by the "clearly erroneous" standard of Rule 52(a), because it is "as much a conclusion of law as a finding of fact." *Stewart v. General Motors Corp.,* 542 F.2d 445, 449 (7th Cir. 1976).

charged because of his race. In light of our analysis, this finding clearly cannot be sustained. We therefore reverse the judgment of the district court and remand for further proceedings. Ordinarily, on remand after reversal of an involuntary dismissal under Rule 41(b), it is unnecessary for the plaintiff to offer his evidence a second time, and the case may proceed with the defendant's presentation of evidence. *See United States v. Gypsum Co.,* 333 U.S. 364, 402 n.20, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *White v. Rimrock Tidelands, Inc.,* 414 F.2d 1336 (5th Cir. 1969); 5 J. Moore, Federal Practice ¶ 41.13[2], at 1152 (1976). However, because of the death of Judge Lynch since trial and because of the possibility that the plaintiff's credibility as a witness may be challenged by the defendant on remand, we believe a full retrial is appropriate here to afford the new trial judge an opportunity to hear the plaintiff testify. Accordingly, the case is remanded for a new trial.

REVERSED and REMANDED.