**Howard DAVIS, Plaintiff,**

v.

**METROPOLITAN DADE COUNTY and Dade County Fire Department, Defendants.**

No. 78–1859–CIV–JAG.

United States District Court, S. D. Florida.

Nov. 14, 1979.

Stuart E. Greenberg, Pertnoy & Greenberg, P. A., Miami, Fla., for plaintiff.

Stuart L. Simon, Dade County Atty. by Amy N. Dean, Asst. County Atty., Miami, Fla., for defendants.

## MEMORANDUM OPINION

GONZALEZ, District Judge.

This is a civil rights complaint for damages and reinstatement under Title 42, Section 2000e et seq., of the Civil Rights Act of 1964, as amended; and under Title 42, Section 1981, of the Civil Rights Act of 1866.

The § 1981 claim was barred by the statute of limitations and was accordingly dismissed at time of trial. See *Johnson v. Goodyear Tire & Rubber Co., Synthetic Rubber Plant,* 491 F.2d 1364, 1379 n. 49 (5th Cir. 1974).

Plaintiff, Howard Davis, is a black male who was employed on July 14, 1975 by Metropolitan Dade County to be trained as a fire fighter. The Dade County Fire Department has a rigorous training program which recruits must successfully complete before becoming full-fledged fire fighters. Phase I of the training program consists of attendance at the Fire College operated by the Metropolitan Dade County Fire Department. Davis was discharged on September 12, 1975 a few hours before graduation. He had completed the eight week Phase I course and on September 4, 1975 had been certified as having passed the state requirements for a fire fighter by the State of Florida Fire Fighters Council. Thereafter Davis successfully attended the University of Miami by day while supporting himself at various odd jobs including driving a taxi at night. He is presently employed by the City of Miami as a fire fighter. Davis has brought this action alleging, *inter alia,* that he was discharged because of his race.

■ The shifting burdens of proof applicable to Title VII actions were set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) as follows:

"The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications."

If the complainant meets his initial burden, the employer must then come forward "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* at 802, 93 S.Ct. at 1824. This is satisfied by "explain(ing) what he (the employer) has done" or "producing evidence of legitimate non-discriminatory reasons." *Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24, 25 n. 2, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978) (per curiam), *quoting id.* at 28, 29, 99 S.Ct. 295, 298 (Stevens, J., dissenting). See also *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978).

Where the employer meets his burden the plaintiff-complainant is then afforded the opportunity of demonstrating that these "presumptively valid reasons for his rejection were in fact a coverup for a racially discriminatory decision." *McDonnell Douglas,* 411 U.S. at 805, 93 S.Ct. at 1826.

■ In this case the Court finds that Davis met his preliminary burden of proof. Davis is a member of a racial minority, was qualified for the position as evidenced by his state certification, and was rejected although the employer retained other recruits with the same qualifications. Davis' demonstration of his qualifications as a fire fighter raises the inference that he was discharged because of his race. See *Flowers v. Crouch-Walker Corp.,* 552 F.2d 1277, 1282–83 (7th Cir. 1977).

Davis' level of performance during the Phase I training program is documented by the defendants' bi-weekly "Dade County

Fire College Student Evaluation" forms which were prepared by plaintiff's supervisor for each two week period of the training program. (See Defendants' Exhibits F, G, I, J.) The Fire College staff used this device as a means for objectively assessing each recruit. The "Student Evaluation" rating scale is as follows:

A. Completely unacceptable performance or attitude.

B. Unacceptable, however, student may improve under constant supervision or own initiative.

C. Acceptable with reservations. Student needs improvement to maintain consistent acceptable level of performance.

D. Student consistently maintains an acceptable level of performance.

E. Student often exceeds an acceptable level of performance.

F. Student usually exceeds an acceptable level of performance.

The factors rated are:

(1) Physical Fitness (2) Agility and Coordination (3) Safety Habits (4) Reaction to Smoke and Heat (5) Drill Performance (6) Attitude Toward Supervisors (7) Relationship With Other Students (8) Attitude Toward Work (9) Initiative (10) Dependability (11) Quantity of Work (12) Quality of Work (13) Attendance and Punctuality (14) Appearance (15) Reaction to Heights.

The form also provides space under each factor for any comments the supervisor wishes to make. Davis received twelve C's and forty-five D's for a total of fifty-seven grades in the acceptable range. He received only two B's—both in the last two-week period. (During the period from July 14, 1975 to July 25, 1975 Davis did not receive a grade for the factor "Reaction to Smoke and Heat.")

The bi-weekly evaluations clearly demonstrate that the Fire College staff consistently found Davis to be an acceptable employee. By showing that his performance was satisfactory, Davis raised an inference of discrimination in his discharge under the *McDonnell Douglas* test. See *Flowers,* 552 F.2d at 1282.

The burden then shifted to Metropolitan Dade County and its Fire Department to articulate a legitimate non-discriminatory reason for terminating Davis' employment.

■ Defendants provide three reasons for plaintiff's discharge.

First, there were reports that Davis had "stolen" food belonging to other recruits. One incident involved a piece of cake that Davis and another recruit admittedly ate. Davis testified that this occurred on a Friday afternoon when he was assigned to "clean out" the refrigerator regularly used by recruits to store their lunches. Rather than throwing the cake out Davis ate it. In another incident he allegedly stole a lunch belonging to a fellow recruit. This witness (of Cuban background) testified that Davis could not have been mistaken as to the ownership of the lunch since it consisted of black beans and white rice, a dish popular among the Cuban people. Davis denies taking the black beans and rice. Finally, defendants charge that Davis was seen taking food from a "Tasty Wagon" snack truck. A report of this incident was made, but following an investigation the allegations were dismissed by the officials at the Fire College since the evidence was inconclusive. Davis admits taking food from the "Tasty Wagon" but says he did so pursuant to an agreement with the owner. The owner of the snack truck confirmed this agreement.

It should be noted that none of these incidents resulted in Davis' receiving an unacceptable rating on the student evaluation form. Although the report for the period from "8–25–75 to 9–5–75" under factor 7 specifically notes "Taken (sic) recruits lunches without permission", nevertheless, Davis was given an acceptable rating.

The second reason given for discharging Davis was his alleged inability to work in groups. Testimony was offered that Davis was a "loner" who kept to himself rather than participating in social comraderie. As an example, defendants state that during an outside knot tying drill Davis was off to one side dancing and singing to himself rather than taking part in the group activi-

ty. This incident was also offered as proof of Davis' "poor relationship" with his supervisors.

Finally, the Fire College staff felt that Davis lacked the motivation and attitude to be an acceptable fire fighter. Davis was viewed as a lackadaisical recruit who often fell asleep during class and needed close supervision while awake. Several staff members testified that Davis was a slow worker, that he lacked initiative, and that he failed to volunteer when help was requested although all admitted he never disobeyed an order.

Although these may be presumptively valid non-discriminatory reasons for discharge, Davis has demonstrated by a preponderance of the evidence that his employers explanation was a pretext for a racially discriminatory decision. *McDonnell Douglas,* 411 U.S. at 805, 93 S.Ct. 1817; *Turner v. Texas Instruments, Inc.,* 555 F.2d 1251, 1255 (5th Cir. 1977). The Court is satisfied that Davis has met his burden and has proven that the reasons given for his discharge "were in fact a coverup for a racially discriminatory decision." *McDonnell Douglas,* 411 U.S. at 805, 93 S.Ct. at 1826.

█ It has been recognized that where employment procedures depend almost entirely upon subjective evaluations and a favorable recommendation from an immediate supervisor there exists a "ready mechanism" for racial discrimination. *Parson v. Kaiser Aluminum & Chemical Corp.,* 575 F.2d 1374, 1385 (5th Cir. 1978), *cert. denied,* 441 U.S. 968, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979); *Pettway v. American Cast Iron Pipe Co.,* 494 F.2d 211, 231 (5th Cir. 1974) *cert. denied,* 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979); *Rowe v. General Motors Corp.,* 457 F.2d 348, 359 (5th Cir. 1972). To protect minority employees from potential abuses, any system in which subjective evaluations determine hirings and promotions must be "carefully scrutinized". *Jenkins v. Caddo-Bossier Assoc. for Retarded Children,* 570 F.2d 1227, 1229 (5th Cir. 1978) (per curiam).

The bi-weekly "objective" "Student Evaluation" forms indicate that Davis had, in fact, successfully completed his Phase I training. These forms demonstrate that although Davis was not a model recruit, he was, nevertheless, an acceptable fire fighter.

The evaluative factor "Attitude Toward Supervisors", for example, is characterized as "The ability to accept and profit from constructive critism (sic). The willingness to follow instructions. The relationship between student and supervisors." In this category Davis was consistently found acceptable; he "Accepts orders willingly, considers critism (sic) in the light it was given; courteous; average respect." The factor "Relationship With Other Students" is described as "The ability to work together with fellow students. The willingness to cooperate." Here too Davis was rated as acceptable. He "gets along well with fellow students; (is) tactful, obliging, cooperative." Even during the period when the alleged lunch thefts occurred and were noted by the supervisor, Davis' evaluation was still in the acceptable range. If Davis had been guilty of offenses serious enough to merit termination he should have been graded as "Unacceptable", that is as "Uncooperative; Tactless; Difficult To work with."

Defendants' statements that they consistently gave Davis acceptable grades in the hope that his performance would improve is simply not credible. The very purpose of the evaluation forms was to arrive at a bi-weekly judgment fair and objective to both plaintiff and defendants. This Court finds it impossible to believe that the defendants would wilfully ignore their own established procedures over a period of months in evaluating one particular recruit. To believe that is to believe that defendants' grading system is a charade, and the Court is convinced it is not.

What then, was the basis for the decision to terminate Davis' employment? The grounds for the discharge were specified in a series of memoranda prepared by the supervisors at the Fire College dated September 10th, 11th, and 12th, 1975.

They indicate the following:

"Due to these incidents (alleged thefts) the poor attitude of Recruit Davis, and his poor relationship with his supervisors, the Training Staff feels that he is unacceptable as an employee as well as a fire fighter. The Training Staff, as a whole, feels that Recruit Davis' performance in the areas of initiative, attitude, and accepting supervision are below acceptable standards for a fire fighter." (McCullough Report, September 10, 1975).

"This supervisor feels uneasy around this man and this opinion is shared by others on the Training Staff." (McGowan Report, September 10, 1975).

"I don't know why he won't readily respond to orders and directions. He sometimes displays arrogance, but in a very subtle manner," (Gourley Report, September 11, 1975).

The Court concludes that this "after the fact" documentation contradicts the regular, routine evaluations that the same members of the Training Staff had previously made. Davis had no opportunity to improve his performance when his bi-weekly evaluations consistently demonstrated a favorable work record. The September 12th discharge does not comport with Title VII's purpose of removing "artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of rac(e)." *Griggs v. Duke Power Co.,* 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971).

The Court concludes, as a matter of law, that the Plaintiff has established a prima facie case of racial discrimination pursuant to Title VII of the Civil Rights Act of 1964. The Court also concludes that the evidence clearly shows that the reasons articulated by the Defendants were a pretext to discriminate against the Plaintiff based on his race. The Plaintiff is, therefore, entitled to be made whole under Section 706(g) of the Act, U.S.C. § 2000e-5(g). *Albermarle Paper Company v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). Plaintiff is entitled to back pay based on what he would have earned if retained, and other damages if appropriate.

The Plaintiff shall submit a memoranda on back pay and other damages within twenty (20) days from the date of this Order, and the Defendants shall respond within ten (10) days thereafter.

The Plaintiff is also entitled to an award of costs and a reasonable attorney's fee. The Plaintiff shall submit a motion and supporting affidavits within twenty (20) days from the date of this Order.

Judgment shall thereafter be entered for the Plaintiff consistent with this opinion.