STATE DIVISION OF HUMAN
RIGHTS on the complaint(s)
of Mathial Bonhomme, Plaintiff,

v.

OZONE INDUSTRIES, INCORPORAT-
ED, Subsidiary of Joy Manufacturing
Company; Gilbert Austein; Interna-
tional Association of Machinists and
Aerospace Workers, AFL–CIO, District
No. 15, Defendants.

No. 83 Civ. 4474 (KTD).

United States District Court,
S.D. New York.

Feb. 27, 1985.

As Amended April 18, 1985.

Jimmie L. Engram, New York City, for plaintiff.

Feltman, Karesh & Major, New York City, for defendants Ozone Industries, Inc. and Gilbert Austein; John I. Karesh and Donald F. Schneider, New York City, of counsel.

Vladeck, Waldman, Elias & Engelhard, P.C., New York City, for defendant Dist. 15, Intern. Ass'n of Machinists and Aerospace Workers, AFL–CIO; Sheldon Engelhard and Kenneth C. Morgan, New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge.

Plaintiff, Mathial Bonhomme, brings this employment discrimination suit pursuant to

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, against defendants, Ozone Industries, Inc. ("Ozone"), a subsidiary of Joy Manufacturing Co., Gilbert Austein, and International Association of Machinists and Aerospace Workers, AFL–CIO, District No. 15 ("District 15"), alleging that defendants discriminated against plaintiff because of his race and national origin by laying him off and subsequently refusing to rehire him. A two-day nonjury trial was held on November 19–20, 1984. The following shall constitute my findings of fact and conclusions of law.

## FACTS

Defendant Ozone is a Delaware corporation which designs and manufactures aerospace hydraulics and which is licensed to do business in New York State. Plaintiff is a black legal resident of the United States who is of Haitian ancestry and who resides in Brooklyn, New York. Plaintiff worked for Ozone, primarily as a porter, from September 18, 1974 until April 4, 1977, at which time he was laid-off pursuant to a general reduction in Ozone's work force. At all material times, plaintiff's union was District 15.

Defendant Austein, the Industrial Relations Manager of Ozone at the time plaintiff was released, testified that, as part of the reduction, twenty hourly employees had to be laid-off. Of these twenty employees, sixteen were white, two were black, and two were Spanish. As a result of these layoffs, and the exercise of bumping rights, the number of porters was reduced from five (four blacks and one white) to four (all blacks).

In the afternoon of April 4, 1977, the day plaintiff's lay-off was to become effective, a wrist watch was taken from Al Sisto, an employee of Ozone. Mr. Sisto immediately reported to Mr. Austein that his watch was missing. Although he did not see anyone take the watch, Mr. Sisto stated that when he left his work bench, where the watch was last seen, the only people in the area were plaintiff and Guy DiManche, also a black porter of Haitian ancestry who was being laid-off as of that day.

At the trial, Mr. Austein testified that, upon hearing of the possible theft, he tried unsuccessfully to contact both Mr. DiManche and plaintiff. The next morning, on April 5, 1977, Mr. Austein again attempted to contact the two but was unable to speak to either. That afternoon, however, Mr. DiManche returned Mr. Austein's call and indicated that he had the watch and would return it the next day. On April 6, 1977, when Mr. DiManche returned the watch, he explained "that his friend Mr. Bonhomme 'found' the watch upon arriving home and gave it to him (DiManche)." Defendant's Exh. C. (Written Agreement dated April 6, 1977, signed by Gilbert Austein and Paul Panza, the Chief Shop Steward of District 15).

Convinced that both men had stolen the watch, Mr. Austein made an initial determination "to change the lay-off of both DiManche and Bonhomme to a discharge for cause." *Id.* However, after discussing the matter with Mr. Panza and realizing that such a change would result in a loss of unemployment benefits for each man, Mr. Austein agreed with Mr. Panza that the lay-off would remain effective. "However, [Mr. Austein and Mr. Panza] further agreed that in the event of a recall that would enable Mr. DiManche or Mr. Bonhomme to a recall opportunity, such recall would be waived." *Id.* As a result of this agreement, neither Mr. Bonhomme nor Mr. DiManche was recalled by Ozone even though their positions were eventually refilled as a result of recalls. The individuals who were recalled instead of Mr. Bonhomme and Mr. DiManche were both white.

## DISCUSSION

It should be noted at the outset that plaintiff's counsel conceded at trial that, with regard to the initial lay-off, there was no discrimination. Rather, plaintiff only claims that he was subsequently not recalled because of his race and national origin. Defendants deny that the refusal to recall plaintiff was in any way discrimina-

torily based, arguing that the decision resulted solely from the belief that plaintiff had stolen a fellow employee's watch.

The allocation of plaintiff's and defendants' burdens in a Title VII discrimination action, as set forth in the seminal opinion in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), was restated by the Supreme Court in its more recent decision in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). The Court stated:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination … [Note, however, that the] ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Id.* (citations omitted). In *McDonnell Douglas*, the Court stated that the initial burden of establishing a *prima facie* case of discrimination may be satisfied by showing:

> (i) that [plaintiff] belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. Although *McDonnell Douglas* involved a claim of discriminatory failure to hire and the instant action is for discriminatory failure to recall, the above criteria, with slight modification, is still applicable.[1]

In discriminatory discharge cases, a plaintiff is required to show as an additional element that, when he was working, he was fulfilling the normal requirements of the job. *See Flowers v. Crouch-Walker Corp.*, 552 F.2d 1277, 1283 (7th Cir.1977). This element is also appropriately applied to discriminatory failure to recall cases as the claimant's prior work performance is a relevant factor in determining whether an inference can be made that the employer's decision not to recall plaintiff was discriminatorily based. In order to prove this element, "plaintiff need not show perfect performance or even average performance. … He need only show that his performance was of sufficient quality to merit continued employment. …" *Flowers*, 552 F.2d at 1283.

Courts have held that the final element of a *prima facie* discrimination case —"that, after [plaintiff's] rejection, the position remained open and the employer continued to seek applicants from persons of [plaintiff's] qualifications"—may be "satisfied by proof that plaintiff was replaced by a non-minority worker." *Said v. Institute of International Education, Inc.*, 29 Empl.Prac.Dec. (CCH) ¶ 32,751 at 25,534 (citing *Wade v. New York Telephone Co.*, 500 F.Supp. 1170, 1174 (S.D.N.Y.1980); *Wooten v. New York Telephone Co.*, 485 F.Supp. 748 (S.D.N.Y.1980)). Although these courts were concerned with discriminatory discharge cases, this proof should also be sufficient to satisfy the final element of a *prima facie* case of discriminatory failure to recall.

Thus, the essential elements of a *prima facie* case of discriminatory failure to recall

---

**1.** As the Supreme Court noted, "[t]he facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from [plaintiff] is not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13.

are as follows: (1) that plaintiff is part of a minority; (2) that he was qualified to perform the job in question; (3) that, when he was working, he satisfied the normal requirements of the job; (4) that, following the lay-off, a recall was conducted and, although eligible, plaintiff was not recalled; and (5) that the individual who was recalled instead of plaintiff was a non-minority former employee.

■ Applying this test to the instant case, I conclude that plaintiff has set forth a *prima facie* case of discrimination. Mr. Bonhomme is a black of Haitian ancestry who was apparently qualified to be a porter and who had satisfied the normal requirements of a porter. After the lay-off, he was not recalled, even though eligible, and the individual who was recalled in his stead was white.

As discussed above, once a *prima facie* case of discrimination has been proved, the burden is then defendants' "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." In *Texas Department of Community Affairs v. Burdine,* the Supreme Court discussed exactly what is required to meet this burden:

The burden that shifts to the defendant ... is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected ... for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. *See [Board of Trustees of Keene College v. Sweeney,* 439 U.S. 24, 25, 99 S.Ct. 295, 295, 58 L.Ed.2d 216 (1979)]. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the de-

fendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity.

450 U.S. at 254–55, 101 S.Ct. at 1094–95 (footnotes omitted).

Defendants have clearly met their burden. Indeed, through cross-examination of plaintiff's witnesses, defendants went beyond what is minimally required (i.e. articulation) and proved conclusively to me that their sole reason for not rehiring plaintiff was their belief that he had stolen a fellow employee's watch. The testimony of Mr. Austein, Mr. Panza, and, indeed, plaintiff himself[2] established the following. Mr. DiManche was a close personal friend of Mr. Bonhomme and had originally recommended to Mr. Bonhomme to apply for a job at Ozone. After Mr. Sisto's watch was reported missing and circumstantial evidence was presented to Mr. Austein implicating Mr. Bonhomme and Mr. DiManche, Mr. Austein attempted to contact the two suspects. Only Mr. DiManche responded. He returned the watch stating that his friend, Mr. Bonhomme, had "found" it. Concluding that both Mr. Bonhomme and Mr. DiManche had intentionally taken Mr. Sisto's watch, Mr. Austein's first reaction was to change the characterizations of the releases of both employees from lay-offs to discharges for cause. However, after discussing the matter with Mr. Panza and determining that such a change would render both employees unable to receive unemployment benefits, Mr. Austein agreed to simply rescind any recall rights Mr. DiManche and Mr. Bonhomme might have had in the future.

As a result of defendants' clear articulation of a legitimate, nondiscriminatory reason for refusing to recall Mr. Bonhomme, the burden shifted back to plaintiff to prove that this was not the true reason for

---

**2.** Although plaintiff's testimony was riddled with inconsistencies and feeble attempts to mask and distort the truth, the basic facts relevant to the disposition of this case were suffi-

ciently clarified during defense counsel's cross-examination so as to render plaintiff's prevarications ineffective.

**442**

defendants' employment decision but rather a pretext for discrimination. A plaintiff may succeed in carrying this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Department of Community Affairs v. Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095 (citation omitted). Plaintiff, however, did not even produce evidence tending to show pretext, nevertheless persuade the court of such a fact.

At the end of plaintiff's case defense counsel chose not to present any witnesses, and, instead, to rest on their cross-examinations of plaintiff's witnesses. At this point, I explained to plaintiff's counsel, Jimmie L. Engram, Esq., that there were serious deficiencies in his case. Specifically, I stated that, given defendants' articulation of a legitimate, nondiscriminatory reason for refusing to recall plaintiff, plaintiff must prove that this reason was merely a pretext for discrimination in order to prevail. I noted further that plaintiff had failed woefully in this regard. Mr. Engram responded that he thought defendants were going to present witnesses and that he needed to cross-examine these witnesses to show pretext. Consequently, I gave Mr. Engram the opportunity to call these witnesses himself and treat them as hostile. However, after conferring with the prospective witnesses, Mr. Engram decided not to examine them. Instead, he simply rested his case without introducing any further evidence.

Accordingly, as plaintiff was unable to produce any evidence, direct or indirect, that defendants' stated reason for not recalling plaintiff was merely a pretext for discrimination, plaintiff's case is dismissed.