OZELL SMITH, Petitioner, v. THE CHICAGO BOARD OF EDUCATION *et al.*, Respondents.

First District (4th Division)   No. 87—0177

Opinion filed November 3, 1988.—Rehearing denied December 5, 1988.

JOHNSON, J., dissenting.

McBride, Baker & Coles, of Chicago (Steven B. Varick, of counsel), for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and William H. London, Assistant Attorney General, of Chicago, of counsel), for respondents.

JUSTICE LINN delivered the opinion of the court:

Petitioner, Ozell Smith, is a black woman who was discharged from her position as vocational assistant by the principal of Thorp E.V.G. Center in June of 1980, when her position and that of another person were eliminated. She had been employed by the Chicago Board of Education (Board) for approximately 10 years in various positions. In 1973, Smith was offered a career service probationary teacher's aide position, which she declined in favor of participating in a federally funded program known as "Basic Occupational and Skilled Therapy" (BOAST).

From September 1977 until June 1979 Smith had a provisional position as vocational assistant in the print shop of Tennyson School, which closed in June 1979. Thereafter she obtained the provisional appointment as vocational assistant at Thorp, a position that was funded with money from the BOAST program. This money was to be allocated by Thorp's principal, Adolph Lebres. The BOAST budget depended on how many BOAST students were anticipated to be in the school the following year. Lebres had no input as to the amount of money that the government would allow per student in the BOAST program.

The BOAST personnel at Thorp included two shop teachers and a program coordinator, as well as the vocational assistants and home visitors. Lebres determined that for the 1979-80 school year he would eliminate two staff positions, one vocational assistant and one home visitor position. He would then add one teacher's aide position. Another vocational assistant, Thelma Bush (also black), was certified in her position, which gave her greater security than Smith had, because the Board's procedure requires that provisional or temporary personnel are to be terminated before certified personnel.

In June 1980 Lebres told Smith that her position had been eliminated because of budget considerations. According to Smith, she then offered to take a pay cut even though Lebres told her that it would be a $200 reduction.

The teacher's aide position was filled by a white woman, who was a certified teacher's aide. This position differs from that of a vocational assistant. Apparently, the teacher's aide performs some work, such as special tutoring in the language arts, that Smith's position did not involve.

Lebres had no control over the person appointed to fill the teacher's aide position. According to the board, such assignments are made on the basis of seniority in the system.

On September 4, 1980, Smith filed a complaint with the Illinois

Department of Human Rights alleging that she had been discriminated against because of her race in violation of the Illinois Human Rights Act (Ill. Rev. Stat. 1987, ch. 68, par. 1—101 *et seq.*). The Department filed a complaint on her behalf on August 28, 1981, before the Illinois Human Rights Commission (Commission). In May 1982, there was a hearing before an administrative law judge. At the close of Smith's case, respondent moved for entry of a directed finding in its favor. Although the administrative law judge indicated her inclination to grant the motion, she requested that a formal motion be filed.

In July 1982 this judge resigned and chief administrative law judge Patricia Patton took over the case. On January 21, 1983, Judge Patton imposed discovery sanctions on respondent and ordered a hearing *de novo*. The hearing was set for March 1983.

On September 4, 1985, Judge Patton entered her interim recommended order and decision. She found that Smith had established a *prima facie* case of race discrimination by the school board. She held that the Board had failed to articulate a legitimate nondiscriminatory reason for Smith's termination. In the alternative, Judge Patton found that even if such reasons had been given, they were a pretext for race discrimination.

Judge Patton noted that the Board had explained Smith's termination in economic terms as its nondiscriminatory reason. Smith had challenged the Board's evidence on this point, since the documentation regarding the relevant fiscal data had been previously barred as a sanction because the Board had failed to produce it in a timely manner.

Following Judge Patton's recommendation that Smith be reinstated, the Board requested the Illinois Human Rights Commission to review and dismiss the findings of the administrative law judge. On December 15, 1986, the Commission reversed the recommended order and decision and ordered instead that Smith's complaint be dismissed.

The Commission agreed with Judge Patton that Smith had established a *prima facie* case of discrimination. The Commission disagreed, however, with her finding that the Board had failed to articulate a nondiscriminatory reason for terminating Smith. The Commission reviewed the testimony of Lebres, Thorp's principal, and concluded that it was "crystal clear that the Respondent felt that a reduction in cost in the BOAST program at Thorp was needed if the BOAST program budget [was] to be balanced. After considering the matter, Mr. Lebres felt that he could balance the budget by eliminating a vocational assistant position and a home visitor position, and by adding a teacher's aid[e] position."

The Commission specifically noted that Judge Patton's ruling on the sufficiency of the Board's articulated reasons for terminating Smith depended on her belief that the absence of fiscal data was fatal to the Board's position. The Commission rejected this conclusion, however, noting that the principal's unrebutted testimony was sufficient, even without the written fiscal documentation, relying on the United States Supreme Court case of *Texas Department of Community Affairs v. Burdine* (1981), 450 U.S. 248, 67 L. Ed. 2d 207, 101 S. Ct. 1089. The Commission further noted that since Judge Patton had applied the incorrect legal standard in determining whether the Board sustained its burden of proof, her finding that the Board had failed to articulate a legitimate, nondiscriminatory reason for discharging Smith must be overturned. Finally, the Commission reversed Judge Patton's alternative finding that even if the Board had stated a legitimate reason, its stated reason was a pretext. The Commission found virtually no evidence of pretext and further found that Smith had failed to prove that the Board's explanation was not worthy of belief.

## I

Smith's basic contention is that the Board failed to meet its burden of rebutting her *prima facie* case of racial discrimination. The Commission thus erred by misapplying the law relating to the Board's burden. It further erred in reversing the administrative law judge's factual finding that the Board's stated reasons for firing Smith were a pretext.

■■ We first address the scope of our review. Sections 2—102(A) and 1—103(Q) of the Illinois Human Rights Act (Ill. Rev. Stat. 1987, ch. 68, pars. 2—102(A), 1—103(Q)), prohibit an employer from discharging an employee on the basis of race, color, religion, national origin, ancestry, age, sex, marital status, handicap or unfavorable military discharge. Judicial review of the Commission's final determinations is available under the Administrative Review Law (Ill. Rev. Stat. 1987, ch. 110, par. 3—101 *et seq.*). (Ill. Rev. Stat. 1987, ch. 68, par. 8—111.) The courts must affirm the Commission's fact findings unless they are against the manifest weight of the evidence (Ill. Rev. Stat. 1987, ch. 68, par. 8—111(A)(2)), and the courts are empowered to review all questions of fact and law presented by the entire record. (*Pepsi-Cola General Bottlers, Inc. v. Illinois Human Rights Comm'n* (1985), 137 Ill. App. 3d 288, 484 N.E.2d 538.) For this court to overturn the Commission's factual determinations as contrary to the manifest weight of the evidence, we would have to find that the opposite conclusion is clearly evidenced or that the Commission's deci-

sion is palpably erroneous. See *Burnham City Hospital v. Human Rights Comm'n* (1984), 126 Ill. App. 3d 999, 467 N.E.2d 635.

The ultimate issue is whether the principal of Thorp intentionally discriminated against Smith on the basis of her race or whether he adequately set out a nondiscriminatory basis for her discharge.

■ Citing to *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817, the United States Supreme Court set out the following analytical framework.

"First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' [Citation.] Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." (*Texas Department of Community Affairs v. Burdine* (1981), 450 U.S. 248, 252-53, 67 L. Ed. 2d 207, 215, 101 S. Ct. 1089, 1093.) "The defendant need not persuade the court that it was actually motivated by the proffered reasons. [Citation.] It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." 450 U.S. at 254-55, 67 L. Ed. 2d at 216, 101 S. Ct. at 1094.

■ In the pending case, Smith established her *prima facie* case of unlawful discrimination by showing that she was a member of a minority group, she was qualified for and was performing her job adequately, she was discharged, and she was replaced by a nonminority employee. See *Flowers v. Crouch-Walker Corp.* (7th Cir. 1977), 552 F.2d 1277, 1282.

■ The Commission found that, although Smith had proved her *prima facie* case, Thorp's principal's testimony as to his nondiscriminatory reasons for discharging Smith were sufficient to sustain the employer's burden of rebutting the *prima facie* case. Under *Burdine*, to satisfy the employer's burden of articulating a nondiscriminatory reason, "the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." (450 U.S. at 257, 67 L. Ed. 2d at 218, 101 S. Ct. at 1096.) The employer's burden is only to explain "clearly the nondiscriminatory reasons for its actions." 450 U.S. at 260, 67 L. Ed. 2d at 219, 101 S. Ct. at 1097.

■ In this case, Lebres testified that he eliminated two positions in the federally funded BOAST program in order to save money and that he hired only one person as a replacement. Her position, moreover, was as a teacher's aide, a separate and distinct employment category from that of vocational assistant. The Commission reviewed the testimony, which established that Lebres had explained his budget analysis, where the BOAST money would go, the differences in budget cost between the salary of a vocational assistant and a teacher's aide, and why the other positions in his budget had more priority than did the vocational aide position. We conclude that the Commission's reversal of the administrative law judge's determination was correct based on the standard set forth in *Burdine* and the facts in evidence.

Once the Board met its burden of producing evidence to rebut Smith's *prima facie* case, she retained the burden of persuasion, but the focus shifted to her proof that the nondiscriminatory rationale for her firing was a mere pretext. Her evidence is that she offered to take a pay cut in order to keep her job. Since there was no documentation to corroborate Lebres' testimony as to the financial reasons behind her termination, Smith argues, she established that the stated reason was a pretext.

Smith could sustain her burden of persuasion by directly showing that a discriminatory reason more likely motivated the employer or, indirectly, by showing that the employer's proffered explanation was unworthy of credence. (*Burdine*, 450 U.S. 248, 67 L. Ed. 2d 207, 101 S. Ct. 1089.) Smith contends that Lebres' explanation was unworthy of credence. Judge Patton ruled in her favor.

On review, however, the Commission rejected the determination of pretext on the basis that there was virtually no evidence to support the finding. On the contrary, the record reveals that Smith's position was provisional and, therefore, according to Board's procedure, had less priority than did the certified vocational aide position that was retained. The teacher's aide position that was added was filled by a woman who was next in line according to the system-wide rules; Lebres had no control over who was chosen and simply did not know who it would be, let alone his or her skin color. How a racially motivated intent can be inferred from Lebres' actions under these circumstances is not clear. *After* Lebres had determined that the budget required the elimination of two existing positions and the addition of a new, lower paying one, he told Smith that her job had been eliminated. Regardless of her stated willingness at that time to accept a pay cut to keep her job, we agree with the Commission that this was

insignificant on the question of pretext because the elimination of her job came as a result of the total budget concerns, before she indicated that she would take a cut in pay. She was not being pressured to take less money or otherwise being harassed about her job. Moreover, it appears that the teacher's aide position had additional duties, such as tutoring eighth- and ninth-grade students in language arts classes, that the vocational assistant job lacked. Smith did not establish how her acceptance of a cut in salary, even if possible within the school system, would have solved the particular budgetary concerns that Lebres faced or how he could have achieved the same benefits by retaining her at a lesser salary instead of hiring a teacher's aide after the elimination of two positions. Accordingly, we conclude that the Commission's decision on this issue is correct.

Smith nevertheless contends that she was precluded from testing the nondiscriminatory bases for her discharge because certain documentation was not provided to her and in fact was barred from inclusion as evidence because of the Board's tardy compliance with a discovery request. The administrative law judge had found that Smith's efforts to prove Lebres' testimony unworthy of belief were undermined by the Board's failure to timely offer the documents containing fiscal matters. The Commission, however, noted that Smith failed to move to compel the production of the documents. She did not request a continuance of the hearing to review the documents; in fact, her attorney successfully moved to bar the documents from evidence. Had she believed that the documents were critical to her theory that her discharge was a pretext for discrimination, she could have obtained additional time to review them before the hearing. Moreover, to the extent that the documents were supportive of Lebres' decision to eliminate her position, and presumably they would not have been offered by the Board as part of its case if they did not support it, Smith was not prejudiced by their exclusion. Hence, she is not entitled to speculation that she could have proved Lebres' testimony incredible had she been afforded the opportunity to review the documents in a timely manner.[1]

More important, *Burdine* does not require that documentary evidence corroborative of oral testimony be admitted before an employer

---

[1] If Smith had requested the documents for use in preparing for the cross-examination of Lebres, there is little doubt that she would have been entitled to do so. Instead, she opted to move to bar their admission as evidence and proceed without them. Since documents that are not formally admitted into evidence may nevertheless be used in cross-examination, she could have still requested time to review the documents prior to the cross-examination of Lebres.

sustains its burden of rebutting a *prima facie* case of unlawful discrimination. Indeed, oral testimony that is competent and relevant stands on its own and does not require cumulative or corroborative evidence to establish its authority, if it is otherwise credible. In this case, the Commission found that the administrative law judge appeared to be requiring a much higher level of proof. Judge Patton had cited the Board's failure to submit the fiscal data in a timely fashion as a base for her ruling that the Board had failed to offer legally sufficient evidence in support of its nondiscriminatory reason for discharging Smith. *Burdine*, however, specifically rejected the notion that the employer must persuade the court that it had "convincing, objective reasons for preferring the chosen applicant above the plaintiff." (450 U.S. at 257, 67 L. Ed. 2d at 217, 101 S. Ct. at 1095.) The Commission interpreted Judge Patton's ruling as an unwarranted rejection of Lebres' clear, unrebutted testimony because of the lack of corroborative documentary evidence.

■ We agree with the Commission that the Board's proffered reason for terminating Smith was not a pretext. The administrative law judge's ruling on this issue cannot be separated from her belief that the absence of the documents was fatal to the Board's case. Since she apparently applied an improper legal standard which wrongfully elevated the Board's burden of proof far beyond the requirements of *Burdine*, the Commission properly reversed her findings, which were not sustained by the evidence in any event.

We conclude that the Commission properly rejected the recommendations of the administrative law judge and found in favor of defendants. Accordingly, we affirm the decision of the Commission.

Affirmed.

McMORROW, J., concurs.

JUSTICE JOHNSON, dissenting:
I respectfully dissent from the majority's opinion to affirm the decision of the Commission in favor of respondents. Section 8—107 of the Human Rights Act clearly states that the Commission shall adopt "the hearing officer's findings of fact if they are not contrary to the manifest weight of the evidence." (Ill. Rev. Stat. 1987, ch. 68, par. 8—107(E)(2).) The Commission must accord the same deference to the findings of the administrative law judge as this court must afford to findings of the trial court. (*Quincy Country Club v. Human Rights Comm'n* (1986), 147 Ill. App. 3d 497, 499.) Deference to the adminis-

trative law judge is based on his ability to observe the witnesses' demeanor and to assess their credibility, unlike the Commission, which only has the "cold" record before it. Thus, the issue before us is whether the Commission properly found the administrative law judge's findings to be contrary to the manifest weight of the evidence.

"Verdicts and judgments are only considered against the manifest weight of the evidence where a conclusion opposite to that reached by the [trier of fact] is clearly evident or the [decision of the trier of fact] is palpably erroneous." (*Daniggelis v. Pivan* (1987), 159 Ill. App. 3d 1097, 1101.) The Commission claimed that since Chief Administrative Law Judge Patricia Patton applied the incorrect legal standard in determining whether the Board had fulfilled its burden, the manifest weight of the evidence rule was inapplicable. It asserted that the administrative law judge applied a stricter standard in requiring the Board to produce the budget figures, which allegedly justified the discharge.

The Commission as well as the majority misunderstood Judge Patton's rationale. She did not determine that the Board had not met its burden solely because it did not produce certain documents. She properly found that the Board's failure to produce the budget denied petitioner a full and fair opportunity to rebut the Board's proffered explanation for her discharge.

The Commission and the majority strongly rely on the United States Supreme Court decision, *Texas Department of Community Affairs v. Burdine* (1981), 450 U.S. 248, 67 L. Ed. 2d 207, 101 S. Ct. 1089. Each argues that under *Burdine* a mere assertion of a nondiscriminatory reason is sufficient to rebut the *prima facie* case. I disagree.

. Although *Burdine* may not require documentation to support the employer's explanation, it surely does not suggest that a mere assertion is sufficient to rebut the *prima facie* case. The Court specifically outlined the employer's burden by stating the following:

"[T]he defendant must clearly set forth, through the introduction of admissible evidence, the reasons for plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. *** Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's *prima facie* case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." (*Burdine*, 450 U.S. at 255-56, 67 L. Ed. 2d at 216-17, 101 S. Ct. at 1094-95.)

Accordingly, whether the evidence be in the form of documentation or in the form of oral testimony, the administrative law judge must be able to rationally conclude that the employer's decision "had not been motivated by discriminatory animus." *Burdine*, 450 U.S. at 257, 67 L. Ed. 2d at 218, 101 S. Ct. at 1096.

Here, in addition to finding that the Board's failure to produce the budget prejudiced petitioner, Judge Patton also found that the Board's mere assertion that petitioner was dismissed for economic reasons was legally insufficient. "An articulation not admitted into evidence will not suffice. Thus, the defendant cannot meet its burden merely through an answer to the complaint or by argument of counsel." *Burdine*, 450 U.S. at 255 n.9, 67 L. Ed. 2d at 216 n.9, 101 S. Ct. 1094 n.9.

Judge Patton did not misapply the law; therefore, the manifest weight of the evidence standard of review is applicable here. Accordingly, her findings were not palpably erroneous, and there was ample evidence in the record to support her findings.

I would reverse the decision of the Commission.