CARVER LUMBER COMPANY, Appellant, v. THE HUMAN RIGHTS COMMISSION *et al.*, Appellees.

Third District   No. 3—87—0075

Opinion filed October 30, 1987.

Thomas G. Harvel, Homer W. Keller, and Ross E. Canterbury, all of Westervelt, Johnson, Nicoll & Keller, of Peoria, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Jill A. Deutsch, Assistant Attorney General, of Chicago, of counsel), for appellee Human Rights Commission.

Donald R. Jackson, of Jackson, Mitchell & Collier, of Peoria, for appellee James Offutt.

JUSTICE GREEN delivered the opinion of the court:

On September 13, 1982, respondent, James Offutt (Offutt), filed a complaint with respondent, the Illinois Human Rights Commission (Commission), alleging that he had been laid off and not recalled by his employer, Carver Lumber Company, because he was black and because he had a physical handicap. After a hearing, the Commission filed a complaint with itself against the employer on December 23, 1983, charging the employer with refusing to recall Offutt because of a "perceived handicap, back condition" in violation of section 2—102(A) of the Illinois Human Rights Act (Act) (Ill. Rev. Stat. 1983, ch. 68, par. 2—102(A)). Hearings were held before administrative law judge (ALJ) Sandra Y. Jones, who left office before making a decision. ALJ Kenneth N. Parker, Jr., then reviewed the record and Judge Jones' notes. On July 17, 1985, Judge Parker entered an order (1) finding that discrimination based upon a perceived handicap had not been proved, and (2) recommending that the case be dismissed.

On June 2, 1986, the Commission entered a nonfinal order reversing the recommended order and decision of the ALJ as contrary to the manifest weight of the evidence. The Commission remanded the case to the administrative law section of the Commission (1) to determine damages and attorney fees and costs incurred by Offutt as a

result of the discrimination, and (2) to recommend any other finding or determination necessary to grant complete relief. On September 7, 1986, Judge Parker entered an order recommending that Offutt be awarded (1) back pay in the sum of $70,226.04; (2) holiday pay of $3,088.65; (3) pension contributions of $5,616; and (4) attorney fees and costs of $6,448 and $314.70, respectively. The order recommended that the employer be required to take certain steps to curb subsequent discrimination. On January 9, 1987, the Commission entered an order approving those recommendations and finally disposing of the case.

The employer has appealed directly to this court. (Ill. Rev. Stat. 1985, ch. 68, par. 8—111(A)(3).) The employer contends: (1) Federal labor law has preempted action by the Commission in this case; and (2) in any event, under the evidence it was entitled as a matter of law to a decision in its favor on the merits. The questions presented are quite complicated but we determine that by deciding the case as it did, the Commission entered into an area from which it was precluded. We reverse for that reason.

The evidence before the ALJ showed the following facts to be undisputed: (1) Offutt was employed by the employer as a driver-warehouseman on August 18, 1975; (2) Offutt, along with all other hourly paid employees in this classification, was represented for purposes of collective-bargaining by a Teamster's union which had a succession of collective-bargaining agreements between it and the employer covering, *inter alia*, the wages, hours, and terms and conditions of employment of hourly paid employees such as Offutt; (3) the employer operates several facilities engaged in the lumber-and-building-materials trade, and for the purposes of these proceedings, its War Memorial Drive and Pioneer Park facilities in Peoria are relevant, both of which are covered by the same collective-bargaining agreement; (4) during his employment with his employer, Offutt worked at and from both the War Memorial Drive and Pioneer Park facilities, but he was primarily stationed at the War Memorial Drive facility.

Evidence also showed the following sequence of events to have transpired. In early 1980, the employer suffered a decline in business and determined to lay off some hourly paid employees. Offutt was then among those laid off. Seniority lists were displayed in locations frequently visited by those employees, and these showed Offutt to have seniority based on an initial hiring date of August 18, 1975. The collective-bargaining agreement then in force stated in part:

"In the event of a layoff, an employee so laid off shall be given one week's notice of recall mailed to his last known address. In

the event the employee fails to make himself available for work at the end of the said one week, he shall lose all seniority rights under this agreement."

In March 1980, the employer determined that conditions had improved sufficiently to call back some workers. A dispatcher for the employer then telephoned Offutt and informed him that he had been called back to work at the Pioneer Park facility. Offutt admitted that he was employed elsewhere at the time and refused to return to work at Pioneer Park at that time. Offutt also admitted that, at that time, he realized that his refusal to return to work would result in his name's being placed at the bottom of the seniority list. The dispatcher testified that upon Offutt's refusal to return to work, the dispatcher drew a circle around Offutt's name on the seniority list and placed an arrow by it pointing to the bottom of the list. Several persons who had previously had less seniority than Offutt were then recalled. In June 1980, at which time Offutt's name was at the bottom of the seniority list, he was recalled and returned to work.

Offutt then worked until January 1981, when he suffered a back injury causing him to be off work for 35 weeks, which included a medical leave from October 23, 1981, until January 4, 1982. During the period beginning in January 1981, Offutt had done some light-duty work for the employer. On January 4, 1982, Offutt's physician informed him he was physically able to return to work. Offutt was not recalled to work thereafter. In May 1982, the employer recalled several workers whose seniority began after Offutt's original hiring in 1975, but prior to March 1980.

The most disputed aspect of the evidence arose from testimony by Offutt that on May 1, 1982, he had a conversation with Richard Carver, the employer's president, concerning the employer's decision not to recall him at that time. According to Offutt, Carver stated that he knew that the decision not to recall Offutt had been made by Paul Howe, who handled matters of personnel for the employer. Offutt said that Carver indicated the decision was wrong, but he was going to abide by the decision so that Offutt would not risk reinjuring his back. Carver denied ever having told Offutt that he would not have further work because of his back condition but admitted that, at a time when Offutt was having trouble with his back, he suggested to Offutt that Offutt would be better off if he did not continue working in an area where he might reinjure his back. According to Carver, he was speaking to Offutt, whom he'd known before Offutt came to work for the employer, as a friend. Carver stated that he suggested to Offutt that he would assist Offutt in trying to find other work.

The Commission also gave significance to the testimony of an employee of the employer named Harold Perdue. He testified that after a layoff in 1983, he was called back by the employer but requested that he not be called back at that time because of other work he was doing and suggested that the opportunity be given to the next person in line of seniority. Perdue's testimony indicated that he expressed willingness to come back and was not refusing to return but was asking for a concession. Perdue was then permitted to delay his return to work without loss of seniority.

■■ We consider first the sufficiency of the evidence to prove discrimination. The parties do not dispute that in cases of this nature, the procedure is that originally set forth in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817, and followed with minor modification in *Texas Department of Community Affairs v. Burdine* (1981), 450 U.S. 248, 67 L. Ed. 2d 207, 101 S. Ct. 1089. (See *Burnham City Hospital v. Human Rights Com.* (1984), 126 Ill. App. 3d 999, 467 N.E.2d 635.) Under this procedure, the complainant has the burden of proving by a preponderance of the evidence a *prima facie* case of unlawful discrimination. By establishing a *prima facie* case, the complainant creates a rebuttable presumption that the employer unlawfully discriminated. Then, if the complainant succeeds in proving a *prima facie* case, to rebut the presumption raised the employer must clearly set forth, through the introduction of admissible evidence, a legitimate, nondiscriminatory reason for its employment decision. Third, if the employer carries this burden of production, the presumption of unlawful discrimination drops from the case, and the complainant must prove by a preponderance of the evidence that the legitimate reason offered by the employer was not its true reason but a pretext. The burden of proof merges with complainant's ultimate burden of proving the employer unlawfully discriminated against the complainant.

In his recommended order and decisions, Judge Parker, operating from his perusal of the record and the notes of Judge Jones, followed the foregoing formula. He concluded that Offutt had established a *prima facie* case of discrimination, and the employer had articulated a legitimate, nondiscriminatory reason for its actions. The ALJ further concluded that Offutt did not show that reason to be pretext. The ALJ then found that Offutt knew that his seniority would be changed in 1980 when he refused recall and that the list was marked to show that this had happened. The ALJ further found that Carver had not participated in the decision not to recall Offutt in May 1982, and that the decision was made on the stated reason of seniority rights, and

that the stated reason was not a pretext. The ALJ recognized that Perdue's seniority had not been modified when he did not return immediately upon callback and that while injured, Offutt had been permitted to do certain light work at times, even though he was not then entitled to callback on the basis of his modified seniority. The ALJ found, however, that these actions were taken by the employer for nondiscriminatory reasons. The document recommended that the cause be dismissed with prejudice.

In rejecting the ALJ's recommendations and determining that his findings were contrary to the manifest weight of the evidence, the Commission placed great significance on the testimony of Offutt that Richard Carver had told him that the employer's position was wrong, but he was "going to go along with it" because Carver did not want Offutt to risk reinjury to his back. The Commission deemed Carver's testimony in regard to his conversation with Offutt to be "rather vague" and to tend to corroborate Offutt's testimony, because of Carver's indication that Offutt should not work under conditions where he might reinjure his back. The Commission also indicated that the argument that Offutt was not recalled because he had lost the seniority to be eligible for recall "rings hollow," because Perdue had been permitted to refuse recall without loss of seniority.

We consider the evidence before the Commission from an awkward stance. Section 8—107(E)(2) of the Act (Ill. Rev. Stat. 1985, ch. 68, par. 8—107(E)(2)) states that when the Commission reviews the decision of the ALJ, "[t]he Commission shall adopt the hearing officer's findings of fact if they are not contrary to the manifest weight of the evidence." On the other hand, when we review the decision of the Commission we must sustain the findings of the Commission unless "such findings are contrary to the manifest weight of the evidence" (Ill. Rev. Stat. 1985, ch. 68, par. 8—111(A)(2)). Thus, in passing on the factual determination of the Commission, we do not pass upon the propriety of the Commission's determination that the findings of the ALJ were contrary to the manifest weight of the evidence. Rather, we pass upon the actual determination of the Commission just as if the Commission were the original fact finder.

In cases where the evidence before the ALJ presents a question of fact for the trier of fact, the requirement that the Commission overturn the findings of the ALJ only if the findings are contrary to the manifest weight of the evidence is often unenforceable by courts sitting in administrative review, because those courts cannot find the determination of the Commission to be contrary to the manifest weight of the evidence just because the Commission improperly sets aside the

findings of the ALJ.

Here, substantial evidence supports the position of the employer and the findings of the ALJ. Strong evidence supported a theory that the employer made and recorded its decision to take away Offutt's seniority in March 1980, when he refused callback. This was before Offutt received the injury which gave rise to his claim for compensation and thus prior to the time that the employer gained an incentive to refuse to call Offutt back because he was injury-prone. Offutt admitted that he then knew he would lose seniority, and the evidence that the dispatcher had circled Offutt's name and had drawn an arrow to the bottom of the seniority list was undisputed. Any finding by the Commission that the employer deprived Offutt of his seniority at a later time, or that the decision was made in order to avoid exposure of future injury to Offutt, would be contrary to the manifest weight of the evidence.

However, we do not interpret the Commission's order to be based upon the employer's having taken away Offutt's seniority with a discriminatory intent. Rather, we understand the Commission's theory to be as follows: When Offutt was certified as able to work in January 1982 and then was refused recall in May of 1982, the employer could have disregarded the seniority provisions of the collective-bargaining agreement and returned Offutt to work ahead of those who had more seniority. However, the employer refused to do so, because the employer was afraid that Offutt would increase its exposure to workers' compensation liability due to his back condition.

The major support for the theory that the employer discriminated against Offutt because of his handicap by not calling him back before Offutt was entitled to recall under seniority provisions of the collective-bargaining agreement arises from Offutt's testimony of Carver's telling him that the employer's refusal to recall him was wrong, but that Carver was not going to intervene because Offutt was likely to reinjure himself. Some evidence had been presented that others had been recalled without regard to the seniority list and, while Offutt was recuperating from his back injury, the employer had recalled him, out of order, to do some light work. The fact that the employer agreed to Perdue's request to temporarily forego recall without loss of seniority also supported the Commission's ruling. However, unlike Offutt, Perdue did not refuse to report for work, but merely requested and received a concession.

Offutt's testimony of his conversation with Carver was very self-serving, but it was corroborated to a slight extent by Carver's admitting that he had talked with Offutt and advised him to seek work

where he would be unlikely to reinjure his back. No evidence was presented of any pattern whereby the employer avoided recall of employees who might appear to be injury-prone. Actually, evidence was presented that several employees, including Perdue, who had been called back had experienced back problems. Nevertheless, based upon the evidence we have discussed, we cannot say that the decision of the Commission was contrary to the manifest weight of the evidence when it determined that the employer refused to recall Offutt out of order of seniority for the reason that he might subject the employer to an additional workers' compensation claim and not for the reason that overlooking seniority would be wrong.

While the foregoing decision was not contrary to the manifest weight of the evidence, we conclude that in making a decision that the employer could and should have disregarded the collective-bargaining agreement on seniority, the Commission intruded into territory from which it was precluded by Federal labor law. We now proceed to explain why this was so.

The record before the Commission set forth the arbitration proceedings and those before the National Labor Relations Board (NLRB) which Offutt had initiated before seeking relief from the Commission. On May 17, 1982, Offutt filed a grievance with his union in regard to the employer's failure to treat him as having seniority based on a hiring date of 1975. On June 8, 1982, the grievance was denied, and the matter was referred to binding arbitration pursuant to the terms of the collective-bargaining agreement then in effect for Carver employees. On June 28, 1982, Offutt filed a complaint with the NLRB contending that the employer's refusal to recall him was in retaliation for his having filed a workers' compensation claim for the previously described injury. The NLRB Regional Director deferred action on Offutt's NLRB charge pending resolution of the arbitral proceeding. (See generally 1 C. Morris, The Developing Labor Law 924 (2d ed. 1983).) On August 9, 1982, the arbitrator upheld the employer's actions, stating that Offutt had lost his seniority upon his refusal to return to work in March 1980, and that no employees having less seniority than Offutt had been recalled. On September 29, 1982, the NLRB sustained action by its Regional Director dismissing Offutt's NLRB charge.

The employer argued before the ALJ that Federal labor law preempted the Commission from proceeding. The ALJ rejected this contention, citing *Alexander v. Gardner-Denver Co.* (1974), 415 U.S. 36, 39 L. Ed. 2d 147, 94 S. Ct. 1011. The Commission made no reference to this issue in its orders.

In *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 85 L. Ed. 2d 206, 105 S. Ct. 1904, an employee brought action in a State court charging his employer and its insurer with bad faith in processing his claim for nonoccupationally acquired disability under a plan provided for in a collective-bargaining agreement. The issue was raised as to whether the employee was precluded from bringing the action in the State court because of the preemption of section 301 of the Labor Management Relations Act of 1947 (29 U.S.C. sec. 185 (1982)) or Federal labor law. The State's highest court had held that the claim stated was one for the tort of bad-faith dealing and was not precluded by Federal law. (*Lueck v. Aetna Life Insurance Co.* (1984), 116 Wis. 2d 559, 342 N.W.2d 699.) The United States Supreme Court disagreed, holding that where, as there, the resolution of the State claim "is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract" the claim is either a section 301 claim or one "preempted by Federal labor contract law." (471 U.S. 202, 220, 85 L. Ed. 2d 206, 221, 105 S. Ct. 1904, 1916.) Accordingly, the United States Supreme Court held that the State action was required to be dismissed.

■ Here, the resolution of the State claim before the Commission is dependent upon a theory that the employer could and should have disregarded the seniority provisions of the collective-bargaining agreement and recalled Offutt out of turn. Such a determination touched not only upon the rights of Offutt but also the seniority rights of others under the collective-bargaining agreement. Thus, Offutt's claim here is "substantially dependent upon analysis" of the seniority terms of the collective-bargaining agreement between Carver and its employees and thus was precluded from decision by State tribunals because of Federal policy.

The Commission responds by contending that the decisions in *Alexander v. Gardner-Denver Co.* (1974), 415 U.S. 36, 39 L. Ed. 2d 147, 94 S. Ct. 1011, and *City of Chicago v. Fair Employment Practices Com.* (1980), 87 Ill. App. 3d 597, 410 N.E.2d 136, place litigation involving discrimination in a posture where theories of Federal preemption and preclusion do not apply.

In *Alexander*, the United States Supreme Court held that a litigant claiming discriminatory discharge in an arbitration conducted pursuant to a collective-bargaining agreement and losing was not barred from bringing a separate civil action on that claim in the Federal District Court pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. sec. 2000 *et seq.* (1982)). The court noted the high priority that Congress had given to overcoming discrimination in employ-

ment and stated:

> "Title VII provides for consideration of employment-discrimination claims in several forums. [Citations.] And, in general, submission of a claim to one forum does not preclude a later submission to another. *Moreover the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes.* The clear inference is that Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination." (Emphasis added.) (415 U.S. 36, 47-48, 39 L. Ed. 2d 147, 158, 94 S. Ct. 1011, 1019.)

The *Alexander* court also deemed the employees' contract rights under the collective-bargaining agreement which were being arbitrated to be separate from the employees' statutory rights under the Civil Rights Act of 1964.

In *City of Chicago v. Fair Employment Practices Com.* (1980), 87 Ill. App. 3d 597, 410 N.E.2d 135, a claimant before the defendant Commission had brought an action before the Commission against the plaintiff city, her employer, for a violation of the Fair Employment Practices Act (FEPA) (Ill. Rev. Stat. 1979, ch. 48, par. 851 *et seq.*). She alleged that the employer's pay schedule discriminated against women. During the course of those proceedings, the claimant also obtained an award for the same discriminatory conduct in a class action suit in the Federal court pursuant to several Federal statutes, including Title VII of the Civil Rights Act of 1964 (42 U.S.C. sec. 2000e (1982)). The appellate court held that the award in the Federal suit did not bar an award in the cause under the FEPA. The court analogized to the decision in *Alexander*, where the Court had stated that Title VII actions were not intended to be the sole remedy for recovery for a single act of discrimination. The court stated that, unlike in *Alexander* and its progeny, the issue was whether a State action was barred by a Title VII action, but it reasoned that the difference was not significant. The court recognized that the direct expression of Congress had been that other actions do not bar a Title VII suit, but interpreted the broad language in *Alexander* to indicate that Title VII actions were not to bar State proceedings arising from the same discriminatory act.

Notably, *Alexander* concerned successive Federal procedures for recovery for the same claim of discrimination. The *dicta* indicating that Title VII actions would not be barred by the *res judicata* effect of State court decisions involving the same act of discrimination has

been refuted by *Kremer v. Chemical Construction Corp.* (1982), 456 U.S. 461, 72 L. Ed. 2d 262, 102 S. Ct. 1883. There, the United States Supreme Court held that a State agency determination that no probable cause existed for a charged act of discrimination, upheld on administrative review by a State court of intermediate review, barred a Title VII action in a Federal district court based on the same allegedly discriminatory conduct. The *Kremer* court held that legislation requiring Federal courts to give full faith and credit to the decisions of State courts (456 U.S. 461, 475, 72 L. Ed. 2d 262, 276, 102 S. Ct. 1883, 1894) prohibited retrial of the issue when, as there, the State court decision was one to which the State courts would give preclusive effect.

As is the situation here, the decision in *City of Chicago* does involve the question of preclusion of State litigation, because of the existence of Federal remedies. That court relied on analogy to, and the *dictum* in, *Allis-Chalmers Corp.* As we have indicated, some of that *dictum* has been retracted by the United States Supreme Court. More importantly, the thrust of *Alexander* was that, in enacting Title VII provisions, Congress made a strong expression that the legislation was not to preempt State actions arising from the same alleged act of discrimination. Thus, in *City of Chicago*, the Federal law to which preclusive effect was sought to be given was that about which Congress had clearly intended to have no such effect. Here, the Federal law to which the employer seeks to have preclusive effect given is the National Labor Relations Act and the body of Federal labor law which has been held to be preemptive.

In reaching our decision, we have also considered the decision in *Gonzalez v. Prestress Engineering Corp.* (1986), 115 Ill. 2d 1, 503 N.E.2d 308, which concerned civil suits in the State courts seeking damages for retaliatory discharges. That court held that even when the employer and the employees' bargaining agent have a collective-bargaining agreement, entered into pursuant to Federal labor law and providing for relief for employees improperly discharged, Federal labor law does not preempt the State court action. The court reasoned that the employees' cause of action was not very dependent upon an analysis of the collective-bargaining agreement but, rather, focused upon an enforcement of Illinois public policy. Accordingly, the court considered its decision to be consistent with that in *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 85 L. Ed. 2d 206, 105 S. Ct. 1904.

If the instant decision of the Commission was based on a determination that the employer had discriminated against Offutt because of

a handicap when it placed his name at the bottom of the seniority list in 1980 for refusing work, *Gonzalez* might well require a decision other than that which we have reached. However, because the Commission's decision is based upon the employer's refusal to rehire Offutt at a time when others had seniority, the propriety of that decision by the employer is significantly intertwined with interpretation of the collective-bargaining agreement. Accordingly, neither *Gonzalez*, *Alexander v. Gardner-Denver Co.* (1974), 415 U.S. 36, 39 L. Ed. 2d 147, 94 S. Ct. 1011, nor *City of Chicago v. Fair Employment Practices Com.* (1980), 87 Ill. App. 3d 597, 410 N.E.2d 136, negates the applicability of *Allis-Chalmers Corp.* Because the Commission was precluded from making the instant decision, we reverse.

Reversed.

SPITZ, P.J., and LUND, J., concur.