ALL PURPOSE NURSING SERVICE, Petitioner-Appellant, v. THE HU-MAN RIGHTS COMMISSION *et al.*, Respondents-Appellees.

First District (4th Division)   No. 1—88—3273

Opinion filed October 25, 1990.

Merle L. Royce and Marshall J. Burt, both of Chicago, for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Karen Michels Caille, Assistant Attorney General, of Chicago, of counsel), for respondent Human Rights Commission.

Constantine John Gekas, of Harvitt & Gekas, of Chicago, for respondent Bonnie Walton.

JUSTICE JOHNSON delivered the opinion of the court:

This matter comes before the court on direct appeal from the Illinois Human Rights Commission (hereinafter the Commission), pursuant to section 8—111 of the Illinois Human Rights Act (Ill. Rev. Stat. 1987, ch. 68, par. 8—111(A)(3)). Petitioner, All Purpose Nursing Service, appeals from a decision and order of the Commission that reversed the determination of the administrative law judge (hereinafter the ALJ) that petitioner discriminated against Bonnie Walton by unlawfully discharging her from its employ.

We affirm.

BACKGROUND

Bonnie Walton, an employee of All Purpose Nursing Service, filed

a Human Rights Act charge against her employer on September 17, 1981. Ms. Walton claimed that she was unlawfully discharged on September 16, 1981, because she was subpoenaed to appear as a witness against her employer in another case before the Commission known as In the Matter of Vickie Forni and Quality Care Nursing Home (hereinafter Forni). On January 18, 1983, the Commission issued a complaint alleging that All Purpose Nursing Service fired Ms. Walton because she was a witness against it in another proceeding in violation of section 6—101(A) of the Illinois Human Rights Act. Ill. Rev. Stat. 1987, ch. 68, par. 6—101(A).

On November 14 and 15, 1983, a hearing was held before Administrative Law Judge Grace Dickler. The administrative record shows that Ms. Walton received favorable performance reviews. Ms. Walton was given an "excellent" evaluation in every category (attendance, attitude, cooperation, phone etiquette, and quality of work) in her March 20, 1980, review. In her evaluation of May 2, 1980, she was rated "good" in every category. Her supervisor noted that she could not give Ms. Walton a rating of "excellent" because of that supervisor's then short tenure. In addition, Ms. Walton received regular merit pay raises from May 1979 until June 1981.

Ms. Walton had a problem with tardiness earlier in her employment. This problem was remedied when her work schedule was changed. Ms. Walton's supervisor, Mary Lou Drilich, testified that Ms. Walton was tardy and absent from early August until her termination on September 16, 1981. However, the ALJ excluded the evidence offered to document Ms. Walton's tardiness and her absenteeism on the grounds of hearsay and for lack of a proper foundation for business records. In addition, Ms. Drilich had no firsthand knowledge of the alleged absenteeism and tardiness because the two women took two consecutive vacations between August 10 and September 14, 1981.

In September 1981, Ms. Walton was called to testify in the Forni case. The Forni case was a complaint filed by Vickie Forni, a former employee of Elmhurst Quality Care (now called All Purpose Nursing Service). Ms. Forni alleged that she was wrongfully discharged from her job because she was pregnant. During the summer of 1981, Charles O'Donnell, the firm's vice-president, took Ms. Walton and another employee to lunch and suggested that they be loyal to All Purpose Nursing Service in the Forni matter.

On September 11, 1981, Forni's lawyer appeared at a prehearing conference in the Forni case and informed the ALJ and counsel for Quality Care/All Purpose Nursing Service that Ms. Forni would call four witnesses, "both past and current employees." In a September

14 meeting between Ms. Forni's counsel and Mr. O'Donnell, Ms. Forni's lawyer reiterated that he would call four current or former employees as witnesses.

On September 14, 1981, Mary Lou Drilich gave Ms. Walton a handwritten memorandum of reprimand for insubordination. This reprimand was based upon two allegations: Ms. Walton's alleged failure to follow correct accounting procedures, and the alleged unauthorized switching of days off during Ms. Drilich's vacation. Charges of tardiness and absenteeism were not included in the reprimand despite the fact that Ms. Drilich later testified that these were bases for Ms. Walton's dismissal.

On September 15, 1981, Ms. Walton received a subpoena to testify in the Forni case. On the night of September 15, Ms. Walton telephoned Debby Landa, a fellow employee. Ms. Walton told Ms. Landa that she had been subpoenaed as a witness for Vicki Forni. Ms. Landa, in turn, telephoned Ms. Drilich. Debby Landa told Ms. Drilich that "Bonnie was involved with the Vicki Forni incident and that [Bonnie] may be called to testify."

On September 16, 1981, Mary Lou Drilich and Charles O'Donnell fired Bonnie Walton for "insubordination." Both Ms. Drilich and Mr. O'Donnell admitted that they knew Ms. Walton was to be a witness in the Forni case before they fired her.

In February 1985, Judge Dickler issued a "Recommended Order and Decision" in favor of All Purpose Nursing Service. Administrative Law Judge Dickler found that Ms. Walton established a *prima facie* case of retaliatory discharge in violation of section 6—101(A) of the Illinois Human Rights Act (Ill. Rev. Stat. 1987, ch. 68, par. 6—101(A)). Judge Dickler wrote the following:

> "The Complainant was terminated on September 16, 1981. On September 15, 1981, Respondent discovered that the Complainant was going to be a witness against the Respondent. The timing of this in and of itself raises a strong inference that the Complainant was terminated for impermissible motives. This is buttressed by the fact that the Complainant had received a written warning just a few days before the Complainant was terminated. This would not appear a sufficient time to give the Complainant an opportunity to rectify her behavior and her performance. It is for this reason that the Administrative Law Judge deems that the Complainant has in fact established a *prima facie* case of retaliation."

However, Judge Dickler concluded that All Purpose Nursing Service articulated legitimate nondiscriminatory reasons for Ms. Walton's ter-

mination and that Ms. Walton did not prove by a preponderance of the evidence that the reasons given by All Purpose Nursing Service were pretextual.

On March 8, 1985, Ms. Walton filed her exceptions to the recommended order and decision with exhibits. One of the exhibits submitted was an interim decision in the Forni case recommending that the Commission enter a default judgment against All Purpose Nursing Service for its failure to comply with discovery orders in the Forni case. Subsequently, All Purpose Nursing Service responded to Ms. Walton's exhibit and exceptions on April 11, 1985. Oral arguments were heard by a panel of the Commission on May 15, 1985.

On July 24, 1986, the Commission panel reversed Judge Dickler's recommended order and decision and remanded the case for a hearing on damages. The Commission held that the applicable standard was "[i]f the Complainant can prove it is more likely than not that a prohibited reason motivated the employer, judgment must be entered for the Complainant, even though there is no direct evidence of discrimination." Using this standard, the Commission sustained the complaint and held that Judge Dickler's ruling was "against the manifest weight of the evidence." The Commission stated:

"This is one of the strongest cases of retaliatory discharge based on circumstantial evidence it is possible to imagine. *** We find the only clear and reasonable explanation for the actions of [All Purpose Nursing Service] is the fact that between the warning of September 14th and the discharge on September 16[,] Ms. Walton had been given a subpoena which made it virtually certain that she would be testifying against [All Purpose Nursing Service] in the Forni matter."

On August 26, 1986, All Purpose Nursing Service filed a petition for rehearing. The petition for rehearing alleged that the Commission had not reviewed Judge Dickler's findings of fact in accordance with the manifest weight of the evidence standard. All Purpose Nursing Service contended that the Commission failed to review the record as a whole and improperly substituted its own opinions as to the credibility of the witnesses. The Commission denied this petition.

The case was remanded to Administrative Law Judge Zeva Schub, who issued a recommended order and decision which reinstated Ms. Walton as an employee with full seniority and awarded $39,304.83 in back wages, costs, and attorney fees. On October 1, 1988, the Commission entered a final order affirming the relief.

Petitioner herein, All Purpose Nursing Service, has appealed to this court for review. First, petitioner contends that the Commission

exceeded its statutory authority under section 8—107(E) of the Illinois Human Rights Act (Ill. Rev. Stat. 1987, ch. 68, par. 8—107(E)) by reversing the decision of the ALJ against the manifest weight of the evidence. The Commission maintains that the "manifest weight of the evidence" standard was properly applied.

Second, petitioner argues that the Commission erred by taking judicial notice of a default judgment entered against petitioner in the Forni case. Petitioner contends that this action by the Commission violated (1) the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1987, ch. 127, par. 1001 *et seq.*) (hereinafter the Act), (2) the common law rule of evidence prohibiting the admission of bad acts to prove culpability on another occasion, and (3) petitioner's right to procedural due process. The Commission maintains that judicial notice was proper.

OPINION

We hold that the Commission properly took judicial notice of a default judgment entered against petitioner in the Forni matter for failure to comply with discovery orders. The Commission did not violate the Act, the rules of evidence, or petitioner's right to due process.

■■ ■ The Act provides that an administrative agency may take judicial notice "of matters of which the Circuit Courts of this State may take judicial notice." (Ill. Rev. Stat. 1987, ch. 127, par. 1012(c).) In general, Illinois courts may take judicial notice of administrative orders, determinations, and judgments in related administrative proceedings involving the same parties. (*May Department Stores Co. v. Teamsters Union Local No. 743* (1976), 64 Ill. 2d 153, 159, citing E. Cleary, McCormick on Evidence §330, at 766 (2d ed. 1972).) In addition, the circuit courts may take judicial notice of matters of record in other cases in the same court. (*People v. Davis* (1976), 65 Ill. 2d 157; *Filrep, S.A. v. Barry* (1980), 88 Ill. App. 3d 935; *People v. Hoffman* (1974), 25 Ill. App. 3d 261; *People v. Dye* (1974), 23 Ill. App. 3d 453.) Therefore, an administrative tribunal may take judicial notice of matters of record in another administrative order, determination, or judgment, especially where these proceedings are related and involve the same parties. Both the case at bar and the Forni case were adjudicated by the same administrative agency. Both cases involve All Purpose Nursing Service, and the proceedings are related because Ms. Walton has alleged that the Forni proceeding affected her employment status. Finally, it is a matter of record that All Purpose Nursing Service acted in bad faith by refusing to cooperate with the discovery orders. Accordingly, pursuant to the aforementioned principles, we

hold that the Commission did not violate the Act by taking judicial notice of the interim order in Forni.

■ In addition, we hold that the Commission's act of taking judicial notice of the default judgment in the Forni matter did not violate the common law evidentiary rule which bars the admission of prior bad acts into evidence to prove culpability on another occasion. (*People v. Lehman* (1955), 5 Ill. 2d 337, 342.) The record shows that the Commission considered the judgment evidence of petitioner's state of mind. The Commission stated that the interim order in the Forni case "provide[d] some indication of the tactics which [All Purpose Nursing Service] was willing to use in the *Forni* case." While evidence of bad acts may not be used to show culpability on a separate occasion, it may be used to prove *"modus operandi*, intent, \*\*\* [or] motive." (*People v. McKibbins* (1983), 96 Ill. 2d 176, 182.) Therefore, the Commission's judicial notice of the Forni order was proper.

■ Furthermore, we hold that the Commission did not violate petitioner's right to procedural due process. Petitioner alleges that the Commission violated its right to procedural due process by (1) failing to give petitioner notice that it intended to take judicial notice of the default judgment; and (2) failing to base its decision to take judicial notice of the default judgment solely upon the record pursuant to *Gregory v. Bernardi* (1984), 125 Ill. App. 3d 376, 378, and *Cook County Federal Savings & Loan Association v. Griffin* (1979), 73 Ill. App. 3d 210, 215-16.

We rule that petitioner had notice that the Commission intended to take judicial notice of the judgment and had an opportunity to contest the material noticed. Section 12(c) of the Act provides that "[p]arties shall be notified either before or during the hearing, or by reference in preliminary reports *or otherwise*" (emphasis added) when the Commission intends to take judicial notice of material. (Ill. Rev. Stat. 1987, ch. 127, par. 1012(c).) Section 12(c) of the Act also provides that the parties "shall be afforded an opportunity to contest the material so noticed." (Ill. Rev. Stat. 1987, ch. 127, par. 1012(c).) A copy of the default judgment was incorporated into the record on March 8, 1985, when Ms. Walton filed her exceptions to the recommended order and decision. One of the exhibits submitted with the exceptions was the interim decision in the Forni case recommending that the Commission enter a default judgment against All Purpose Nursing Service for its failure to comply with discovery orders. Petitioner had notice that the Forni decision was submitted to augment the record because petitioner had a copy of the exceptions and the exhibit. Petitioner knew that the Commission might take judicial notice

of the default judgment at its next proceeding. Petitioner had the opportunity to contest the submission in its response to Ms. Walton's exceptions and exhibit on April 11, 1985.

Furthermore, we find that the Commission based its decision to take judicial notice of the default judgment solely upon the record. The default judgment was incorporated into the record on March 8, 1985. In July of 1986, the Commission took judicial notice of the default judgment. In effect, the Commission took judicial notice of a fact that was already a part of the record. For the aforementioned reasons, we hold that the Commission did not violate petitioner's right to procedural due process.

■■ ■ With respect to petitioner's other complaint, we hold that the Commission properly reversed the decision of the administrative law judge (ALJ). The legislature has charged the Commission with the duty to adjudicate claims of employment discrimination based on race. (Ill. Rev. Stat. 1987, ch. 68, par. 1—102(A); *Department of Corrections v. Adams* (1986), 146 Ill. App. 3d 173.) The Commission may designate an ALJ to conduct a hearing to adjudicate the claim. (Ill. Rev. Stat. 1987, ch. 68, par. 8—103(B); *Adams*, 146 Ill. App. 3d at 180-81.) After the hearing, the ALJ must issue a decision and an order for review by the Commission. The Commission also reviews "any written exceptions and responses." (Ill. Rev. Stat. 1987, ch. 68, par. 8—107(E)(1).) After the Commission reviews the record and any exceptions and responses, it "may adopt, modify or reverse in whole or in part the findings and recommendations" of the ALJ. (Ill. Rev. Stat. 1987, ch. 68, par. 8—107(E)(1).) "The Commission shall adopt the [ALJ's] findings of fact if they are not contrary to the manifest weight of the evidence." Ill. Rev. Stat. 1987, ch. 68, par. 8—107(E)(2); *Adams*, 146 Ill. App. 3d at 180.

■■ Judicial review of an administrative decision must be limited to a review of the legal standard used by the Commission and the findings of the Commission. Courts may not "pass upon the propriety of the Commission's determination ***. Rather, we pass upon the actual determination of the Commission just as if the Commission were the original fact finder." (*Carver Lumber Co. v. Human Rights Comm'n* (1987), 162 Ill. App. 3d 419, 424.) Judicial review is limited to the findings of the Commission because a "review of the [ALJ's] decision was not contemplated by the Act and the case law." (*Adams*, 146 Ill. App. 3d at 181.) The legislature and the case law "vest the legitimate decision-making authority in the Commission and not its [ALJ]." (*Adams*, 146 Ill. App. 3d at 181; see *Milan v. Human Rights Comm'n* (1988), 169 Ill. App. 3d 979.) Therefore, this court will re-

strict the scope of its review accordingly.

■ The standard for judicial review of decisions of the Commission regarding employee termination is the "manifest weight of the evidence" test. First, the reviewing court must determine whether the correct standard was applied. If the court is satisfied that the Commission applied this standard, it will then consider whether the Commission's findings were proper or against the manifest weight of the evidence. The legislature requires courts to affirm the factual findings of the Commission "unless the court determines that such findings are contrary to the manifest weight of the evidence." (Ill. Rev. Stat. 1987, ch. 68, par. 8—111(A)(2); see *Smith v. Chicago Board of Education* (1988), 176 Ill. App. 3d 109.) This court has held that "[i]f there is any evidence in the record that supports an administrative agency's decision, [the] decision was not contrary to the manifest weight of the evidence and must be sustained on judicial review." *Lipsey v. Human Rights Comm'n* (1987), 157 Ill. App. 3d 1054, 1065.

■ ■ In order to determine whether a decision is contrary to the manifest weight of the evidence, courts employ the United States Supreme Court's three-part analytical test articulated in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817. The *McDonnell Douglas* test, as explained in *Texas Department of Community Affairs v. Burdine* (1981), 450 U.S. 248, 252-53, 67 L. Ed. 2d 207, 215, 101 S. Ct. 1089, 1093, requires that the plaintiff first prove a *prima facie* case of unlawful discrimination by a preponderance of the evidence. (*McDonnell Douglas Corp.*, 411 U.S. at 804-05, 36 L. Ed. 2d at 679, 93 S. Ct. at 1825; *Acorn Corrugated Box Co. v. Illinois Human Rights Comm'n* (1989), 181 Ill. App. 3d 122; *Department of Corrections v. Adams* (1986), 146 Ill. App. 3d 173, 181; *Village of Oak Lawn v. Illinois Human Rights Comm'n* (1985), 133 Ill. App. 3d 221, 223.) A *prima facie* case of retaliatory discharge may be established when the complainant has proved that (1) he engaged in protected activity by participating in a proceeding under the Human Rights Act, or reasonably and in good faith opposing unlawful discrimination; (2) he demonstrated that the employer took some subsequent adverse action against him; and (3) he demonstrated that there is a causal link between the protected activity and the employer's action. (See *In re Lipsey & Chicago Cook County Criminal Justice Comm'n* (1982), 5 Ill. HRC Rep. 81, 86-87.) By establishing a *prima facie* case, the complainant-employee creates a rebuttable presumption that his employer discriminated against him in violation of the Act. *Acorn*, 181 Ill. App. 3d at 136-37; *Carver Lumber Co. v. Human Rights Comm'n* (1987), 162 Ill. App. 3d 419,

423; *Adams*, 146 Ill. App. 3d at 181.

If the plaintiff succeeds in proving a *prima facie* case, the burden of proof shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection. *McDonnell Douglas Corp.*, 411 U.S. at 802, 36 L. Ed. 2d at 678, 93 S. Ct. at 1824; see *Acorn*, 181 Ill. App. 3d at 137; *Oak Lawn v. Illinois Human Rights Comm'n* (1985), 133 Ill. App. 3d 221, 224.

■ If the employer meets this burden, " 'the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.' " (*Smith v. Chicago Board of Education* (1988), 176 Ill. App. 3d 109, 114, quoting *Texas Department of Community Affairs v. Burdine* (1981), 450 U.S. 248, ·252-53, 67 L. Ed. 2d 207, 215, 101 S. Ct. 1089, 1093.) In order to prove discrimination by a preponderance of the evidence, the plaintiff "need not offer direct evidence that a discriminatory reason motivated his employer. Likewise, he need not show direct evidence of pretext." (*Department of Corrections v. Adams* (1986), 146 Ill. App. 3d 173, 181-82.) The plaintiff can meet his burden of proof by showing "that his employer's proffered explanation is unworthy of belief." (*Adams*, 146 Ill. App. 3d at 181-82; *K mart Corp. v. Illinois Human Rights Comm'n* (1984), 129 Ill. App. 3d 842.) In other cases a plaintiff's burden of proof is met "if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Smith*, 176 Ill. App. 3d at 114; *Burdine*, 450 U.S. at 254-55, 67 L. Ed. 2d at 216, 101 S. Ct. at 1094.

We will now address petitioner's contention that the Commission failed to apply the manifest weight of the evidence standard. We hold that the Commission did apply the manifest weight of the evidence test. The record shows that the Commission panel stated in its order that "[u]nder section 8—107(E)(2) of the Human Rights Act, the Commission may not overturn the factual findings of the Administrative Law Judge unless they are against the manifest weight of the evidence."

■ Furthermore, we hold that the Commission applied the manifest weight of the evidence rule properly. The record shows that respondent Walton presented evidence sufficient to establish the elements of a violation of the Illinois Human Rights Act (Ill. Rev. Stat. 1987, ch. 68, par. 1—101 *et seq.*) pursuant to the *McDonnell Douglas* test.

■ First, Ms. Walton met the burden of proving a *prima facie* case of unlawful discrimination. Initially, Administrative Law Judge

Dickler concluded that Ms. Walton had established a *prima facie* case of discrimination. She found that "a strong inference that the Complainant was terminated for impermissible motives" was raised, and that "the Complainant has in fact established a *prima facie* case of retaliation." The Commission wrote:

> "Ms. Walton had never received any kind of written warning regarding her job performance under a variety of supervisors prior to the time it appeared likely that she was going to testify in the *Forni* case. Every evaluation had listed her as either 'excellent' or 'good.' Ms. Drilich herself had not issued any sort of written warning until September 14. It defies common sense to believe that Ms. Walton's job performance had suddenly become so bad in such a short period of time. This is especially so since the Respondent has failed to provide any reason why Ms. Walton's job performance would have changed so dramatically."

We must affirm the Commission's finding that respondent Walton proved a *prima facie* case. This court must "pass upon the actual determination of the Commission just as if the Commission were the original fact finder." (*Carver Lumber Co. v. Human Rights Comm'n* (1987), 162 Ill. App. 3d 419, 424.) The decision of a Commission is not contrary to the manifest weight of the evidence "[i]f there is any evidence in the record that supports an administrative agency's decision." (*Lipsey v. Human Rights Comm'n* (1987), 157 Ill. App. 3d 1054, 1065.) Indeed, there is strong evidence in the record to support the Commission's finding.

By establishing a *prima facie* case, respondent Walton created a rebuttable presumption of discrimination. The burden was cast upon petitioner to articulate legitimate reasons for terminating respondent Walton's employ. Ms. Drilich, an agent of petitioner, gave four legitimate reasons for firing respondent Walton. Ms. Drilich testified: "The Complainant was often tardy, was guilty of insubordination, that she switched her day off without permission, and that she employed incorrect accounting procedures that were not rectified ***." Ms. Drilich also testified that respondent Walton sought to "discredit" her at "every available opportunity." The Commission accepted that these legitimate reasons for terminating respondent Walton were articulated by petitioner.

It is not disputed that respondent Walton established a *prima facie* case, and that the Commission articulated an allegedly nondiscriminatory reason for terminating her. At issue is whether Ms. Walton proved by a preponderance of the evidence that the articulated reason for her firing was a pretext for discrimination. The ALJ

found that Ms. Walton failed to meet her burden of proof. The Commission found that petitioner's justifications were pretextual based upon the evidence. The standard employed by the Commission was accurate. "A Complainant in a civil rights case need not present direct evidence of discrimination." This court has held that a claimant may meet his burden of proof by presenting evidence of a genuine issue of fact as to whether discrimination occurred. *Smith v. Chicago Board of Education* (1988), 176 Ill. App. 3d 109, 114; *Texas Department of Community Affairs v. Burdine* (1981), 450 U.S. 248, 254-55, 67 L. Ed. 2d 207, 216, 101 S. Ct. 1089, 1094.

■■ ■ We affirm the decision of the Commission. This court has held that where there is evidence in the record to support the decision of an administrative agency, the decision must be sustained because it is not contrary to the manifest weight of the evidence. (*Lipsey v. Human Rights Comm'n* (1987), 157 Ill. App. 3d 1054, 1065.) The record shows that Ms. Walton received good employee evaluations and consistent raises. She was reprimanded and fired by her supervisor after it became clear that she would be called to testify in the Forni case. Furthermore, petitioner refused to comply with discovery orders in the Forni case. Petitioner bears the burden of showing that evidence in the record, when viewed in respondent Walton's favor, is insufficient to support the Commission's ruling. Petitioner has failed to meet this burden. It has long been established that evidence should be viewed in the light most favorable to the prevailing party. See *Trauscht v. Gunkel* (1978), 58 Ill. App. 3d 509; *Hall v. Kirk* (1973), 13 Ill. App. 3d 656.

For the foregoing reasons, the decision of the Commission is affirmed.

Affirmed.

McMORROW, P.J., and LINN, J., concur.