2020 IL App (1st) 192263-U

No. 1-19-2263

FIFTH DIVISION
DECEMBER 11, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| SHAVONDA NEELY, | ) | Petition for Direct |
| | ) | Administrative Review of a |
| Petitioner-Appellant, | ) | Decision of the Illinois Human |
| | ) | Rights Commission. |
| v. | ) | |
| | ) | |
| THE HUMAN RIGHTS COMMISSION, THE | ) | Charge No. 2018 CF 2112 |
| DEPARTMENT OF HUMAN RIGHTS, and | ) | |
| CONTINENTAL AIR TRANSPORT/ CHICAGO | ) | |
| SCHOOL TRANSIT JOINT VENTURE, LLC, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

_____

JUSTICE CUNNINGHAM delivered the judgment of the court.
Justices Hoffman and Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*: The order of the Illinois Human Rights Commission sustaining the Illinois Department of Human Rights' dismissal of petitioner's claims of retaliation for lack of substantial evidence is affirmed.

¶ 2    Petitioner Shavonda Neely appeals *pro se* from a final order entered by the Illinois Human

Rights Commission (Commission) sustaining the Illinois Department of Human Rights'

(Department) dismissal of her charge of unlawful retaliation by her former employer, Continental Air Transport/Chicago School Transit Joint Venture, LLC (Continental), brought under the Illinois Human Rights Act (Act) (775 ILCS 5/1-101, *et seq.* (West 2018)). Petitioner alleged Continental reprimanded her on March 26, 2018, and discharged her on April 3, 2018, in retaliation for engaging in a protected activity—complaining about discrimination based on a hostile work environment. The Department dismissed her charge for lack of substantial evidence. The Commission sustained the Department's decision. On appeal, petitioner maintains the Commission erred in sustaining the dismissal. For the following reasons, we affirm the decision of the Commission.

¶ 3                                    BACKGROUND

¶ 4      Petitioner was employed by Continental as a shuttle bus driver on April 28, 2017, and was a member of the Teamsters Local Union No. 727. She was terminated from her employment on April 3, 2018. Petitioner filed a charge of retaliation with the Department alleging Continental, in retaliation for her internal complaint opposing unlawful discrimination in the workplace, (1) issued her a verbal reprimand on March 26, 2018, and (2) discharged her on April 3, 2018. Petitioner alleged she engaged in protected activity on October 20, 2017, and March 6, 2018, when she complained to Continental management about a hostile work environment. She asserted she was reprimanded and subsequently discharged shortly after engaging in the protected activity, raising an inference of retaliatory motive.

¶ 5      The Department investigated the charge. In preparing the Department's report, the investigator interviewed petitioner and Continental general manager Michael Mairson and considered documentation submitted by the parties, including the warnings given to petitioner,

petitioner's internal complaint to Continental, Continental's employee handbook, Continental's Standards of Work Conduct policy, and Zonar GPS system reports for all shuttle bus drivers. The report set forth the following evidence.

¶ 6     It was uncontested that Continental issued petitioner an oral warning on June 23, 2017, for missing a "run" out of the terminal. On October 20, 2017, petitioner filed a complaint against her direct supervisor, Tyrone Durley, alleging a hostile work environment. On February 11, 2018, Continental issued petitioner a written warning for arriving late to her shift. On March 10, 2018, Continental issued another written warning to petitioner for "two no-call/no-show[s]." On April 3, 2018, Mairson discharged petitioner for spending excessive amounts of time at individual stops on her route or sitting in unauthorized parking areas instead of driving the shuttle bus. Petitioner thereafter filed a grievance with her union regarding her discharge.

¶ 7     Petitioner told the investigator her job duties included moving the shuttle bus every 15 minutes to and from a lot to the airport terminal. Petitioner believed her performance was meeting expectations. On October 20, 2017, she submitted a handwritten complaint against Durley to operational manager Marilyn Simpson, alleging that he asked her personal questions which she did not like, told her she was taking too many bathroom breaks during her shift, and said he could help her get extra hours if she "came to him." Petitioner stated Simpson told her that she would talk to Durley, but petitioner did not hear anything back. On March 6, 2018, petitioner filed a union grievance about the hostile work environment Durley created by harassing her by "being petty." On March 27, 2018, Mairson issued a verbal warning to petitioner because a coworker complained that petitioner made unwelcome advances toward him. Petitioner asserted the coworker did not

sign the complaint, but petitioner was still reprimanded for a policy violation. She believed the allegations and warning were fabricated in response to her complaint of workplace discrimination.

¶ 8    Mairson denied that petitioner's work performance was meeting expectations, as she was issued several write-ups for "tardiness, absenteeism, and other infractions." On June 23, 2017, petitioner received an oral warning for missing a run out of the terminal lot. On February 11, 2018, petitioner received a written warning for calling in after 11 a.m. because she overslept. On March 10, 2018, she received a written warning for a no-call/no-show attendance violation.

¶ 9    Mairson also denied that petitioner was engaged in a protected activity on October 20, 2017, or March 6, 2018. Petitioner's complaint to Simpson alleged Durley asked her personal questions about herself and her family that she felt was none of his business. She alleged Durley harassed her about taking too many bathroom breaks and staying over the allotted 15 minutes. She also alleged he told her he could help her get extra hours, but she did not need his help. Petitioner wanted to pick another shift before the end of her probationary period because she did not want to work with Durley. Mairson noted petitioner did not complain that she was being harassed due to being part of a protected class. Because petitioner's complaint was a claim of a hostile work environment, Simpson forwarded it to Steven Miller, the human resources director. Simpson and Miller thoroughly investigated petitioner's complaint and concluded her allegations lacked merit.

¶ 10   Mairson stated that the union investigated petitioner's claims after she filed a grievance on March 6, 2018, about the same issues with Durley and concluded the claims were unfounded following a hearing. No protected activity was identified as the basis for the grievance.

¶ 11   Mairson stated that petitioner received a verbal reprimand on March 26, 2018, for a policy violation. A coworker filed a complaint with Simpson regarding petitioner's behavior toward him.

Thereafter, Continental's sexual harassment policy was reviewed with petitioner, which was contained in the Employee Handbook, which petitioner had received and acknowledged when she was hired. Following an investigation into the complaint against petitioner, management learned that petitioner had left a note on a coworker's vehicle.

¶ 12 The investigator concluded that petitioner was not issued the March 26, 2018, verbal reprimand in retaliation for opposing unlawful workplace discrimination. Rather, the investigation revealed that petitioner's performance as a shuttle bus driver was unsatisfactory; and that petitioner's complaints of harassment were general in nature and did not point to any violation of petitioner's right to engage in protected activity under the Illinois Human Rights Act. The investigator recommended finding a lack of substantial evidence due to petitioner's failure to establish a *prima facie* case of retaliatory discrimination by her employer, because there was no evidence that petitioner was engaged in a protected activity prior to being reprimanded.

¶ 13 With regard to the April 3, 2018, discharge, petitioner alleged that she was discharged in retaliation for her October 20, 2017, complaint regarding Durley's behavior, which she believed to be workplace discrimination. She charged that her subsequent discharge following her engagement in what she deemed to be protected activity, raised an inference of retaliation by her employer.

¶ 14 Petitioner told the investigator that, on March 27, 2018, Continental conducted an audit of shuttle bus drivers' driving time, and she was informed that she had "large gaps" in which her shuttle bus was stationary. Petitioner explained to management that she had to use the restroom and have lunch during her shift. On that date, Mairson instructed her to stay home while he investigated her time discrepancies. She acknowledged that she previously had been disciplined

for tardiness and attendance. On April 3, 2018, petitioner was informed that she was being discharged for being off-route and in unassigned areas during her shift.

¶ 15    In response, Continental submitted its job description for shuttle bus drivers showing that the responsibilities included, in relevant part, not going off-route. Continental's Standards of Work Conduct policy showed leaving assigned routes or using company vehicles for reasons other than picking up or dropping off airport passengers during work hours without permission would result in disciplinary action, up to and including immediate termination.

¶ 16    Mairson told the investigator he began compiling reports for all drivers from the Zonar GPS system on March 26, 2018, to ensure drivers and buses were operating properly and to reduce the number of complaints. Continental vehicles were equipped with satellite GPS systems and the reports showed whether drivers were staying on schedule and not taking unauthorized detours. Petitioner's March 26, 2018, GPS report showed she spent: (1) several hours during the day taking unauthorized detours, (2) up to 27 minutes at individual stops on the route, and (3) three and a half hours of a seven-hour shift parked at the terminal and in an unauthorized parking lot instead of shuttling passengers. Mairson was "very" concerned because Continental's contract with the City of Chicago required that the wait times for shuttle buses be no longer than 20 minutes.

¶ 17    Mairson compiled GPS reports for all drivers again the following day, March 27, 2018. Petitioner's report again showed that she was detouring the bus without permission. Mairson instructed her to stay home pending an investigation. On April 3, 2018, Mairson informed petitioner that she was being terminated for spending excessive amounts of time at individual stops on her route or sitting in unauthorized parking areas instead of driving the shuttle bus. Mairson had discharged other shuttle bus drivers during the same time period for the same reason.

Continental's documentation showed three other employees had been discharged between August 2017 and June 2018 due to "performance" or for going off-route in unassigned areas.

¶ 18    The investigator concluded petitioner was not discharged based on retaliatory intent. Rather, petitioner's work performance had been unsatisfactory, and petitioner cited no protected basis under the Act in her complaint. The GPS reports showed that petitioner violated Continental's Standards of Work Conduct policy, which prohibits using the buses for reasons other than picking up passengers, an offense which could result in immediate termination. The investigation revealed petitioner had been discharged under that policy, as had other employees.

¶ 19    The Department's investigator recommended a finding of lack of substantial evidence because no evidence showed that Continental had discharged petitioner in retaliation for opposition to alleged unlawful discrimination. Further, petitioner had failed to establish a *prima facie* case of retaliatory discrimination because there was no evidence that she engaged in a protected activity prior to being discharged.

¶ 20    On April 10, 2019, the Department dismissed petitioner's charge for lack of substantial evidence.

¶ 21    Petitioner requested review of the Department's decision, arguing her case should not have been dismissed "due to valid cause of retaliation after filing a report" regarding a hostile work environment created by Durley. She also stated she had a witness who had not been contacted.

¶ 22    On October 8, 2019, the Commission issued its final administrative decision, sustaining the Department's dismissal of the charge for lack of substantial evidence. With regard to the verbal warning, the Commission found petitioner failed to establish that Continental took any adverse action against her, a necessary element to establish her *prima facie* case of retaliation. Specifically,

the Commission found there was no evidence that the verbal warning "affected her employment in any material way" and, accordingly, could not "conclude that the possibility of a verbal reprimand would have dissuade[d] a reasonable worker from engaging in protected activity."

¶ 23    The Commission did find that petitioner established a *prima facie* case of retaliatory discharge, inferring her complaints of a hostile work environment created by Durley were based on her sex. However, it concluded that Continental nevertheless, articulated a non-discriminatory reason for discharging petitioner; specifically that she was spending several hours per day taking unauthorized detours and parking for extended periods. The Commission noted the GPS data for petitioner's shuttle bus showed "she was spending up to 27 minutes at individual stops along the route, and the bus was parking in an unauthorized parking lot for three and a half hours, of her seven hour shift." The GPS data for two consecutive days, March 26 and 27, 2018, showed this conduct. Continental then investigated the matter before terminating petitioner. Because petitioner presented no evidence suggesting Continental's stated reason for her discharge was mere pretext for retaliatory motives, and she did not deny Continental's findings regarding her driving, the Commission found she failed to demonstrate that her discharge was not in accordance with the Act.

¶ 24    On November 5, 2019, petitioner filed a timely *pro se* petition for administrative review directly to this court pursuant to Supreme Court Rule 335. (Ill. S. Ct. R. 335 (eff. July 1, 2017)).

¶ 25                              ANALYSIS

¶ 26    On appeal, petitioner contends that the Commission erred in sustaining the dismissal of her charge for lack of substantial evidence.

¶ 27 As an initial matter, we note petitioner's brief contains deficiencies under Illinois Supreme Court Rules 341 and 342, which govern the content of appellate briefs. For example, petitioner's brief does not contain a "Points and Authorities" section, outlining the points argued and authorities cited in the Argument (see Rule 341(h)(1)), or a statement of jurisdiction (see Rule 341 (h)(4)), and she fails to set forth the applicable standard of review (see Rule 341(h)(3). Ill. S. Ct. R. 341(h) (eff. May 25, 2018). Moreover, petitioner's brief also does not contain a table of contents nor citations to the record on appeal, the decision of the Commission, or the petition for review by this court. Ill. S. Ct. R. 342 (eff. Oct. 1, 2019).

¶ 28 Petitioner's status as a *pro se* litigant does not excuse her failure to comply with the supreme court rules concerning appellate briefs. *Gillard v. Northwestern Memorial Hospital*, 2019 IL App (1st) 182348, ¶ 45. We may strike a brief and dismiss the appeal for failure to comply with the supreme court rules. *Marzano v. Dept. of Emp't. Sec.*, 339 Ill. App. 3d 858, 861 (2003). However, because we have the benefit of a cogent brief from the Commission and Department, we will exercise our discretion and address petitioner's appeal on the merits. See *North Community Bank v. 17011 South Park Ave., LLC*, 2015 IL App (1st) 133672, ¶ 14 (reviewing the merits of the appeal despite the appellant's numerous violations of Supreme Court Rule 341(h)).

¶ 29 Under the Act, it is a civil rights violation to retaliate against an employee for opposing unlawful discrimination. 775 ILCS 5/2-102(A) (West 2018). When a petitioner brings a charge under the Act, the Department shall conduct an investigation to determine whether such claims are supported by substantial evidence. 775 ILCS 5/7A-102(C)(1) (West 2018). "Substantial evidence is evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance." 775

ILCS 5/7A-102(D)(2) (West 2018). Where the Department determines that no substantial evidence supports the charge, it shall dismiss the charge. 775 ILCS 5/7A-102(D)(3) (West 2018). In the event of a dismissal, the petitioner may either commence a civil action in a circuit court, or as is the case here, file a request for review of the dismissal with the Commission. 775 ILCS 5/7A-102(D)(3) (West 2018). A petitioner may seek direct review by the appellate court of a final order by the Commission. 775 ILCS 5/8-111(B)(1) (West 2018). This court reviews the final order of the Commission, not the Department decision. *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 180 (1989).

¶ 30    We review the Commission's final order for an abuse of discretion. 775 ILCS 5/8-111(B)(1) (West 2018); *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 32. Under this standard, we will not disturb the Commission's decision unless it is arbitrary or capricious. *Id.* ¶ 33. A decision is arbitrary or capricious if it contravenes the legislature's intent, fails to consider a critical aspect of the matter, or provides an impossible explanation contrary to agency expertise. *Id.* We do not reweigh the evidence or substitute our judgment for that of the Commission and will find an abuse of discretion only where no reasonable person could agree with the position of the Commission. *Young*, 2012 IL App (1st) 112204, ¶ 33. The Commission's findings of fact "shall be sustained unless the court determines that such findings are contrary to the manifest weight of the evidence." 775 ILCS 5/8-111(B)(2) (West 2018).

¶ 31    In order to establish a *prima facie* case of retaliation, the burden is on the employee to show: (1) she was engaged in a protected activity; (2) her employer committed a material adverse action against her; and (3) a causal nexus existed between the protected activity and the adverse action by the employer. *Hoffelt v. Illinois Department of Human Rights*, 367 Ill. App. 3d 628, 634

(2006) (modified upon denial of rehearing). A *prima facie* case of retaliation may be established by showing a short time span between engaging in a protected activity and the employer's adverse action. *Id.* at 638. To show that the employer's action was materially adverse, the employee must show that a reasonable employee would have found that the challenged action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." (Internal quotations omitted.) *Id.* at 635 (quoting *Burlington Northern & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006)).

¶ 32   If the employee establishes a *prima facie* case of retaliation, there is a rebuttable presumption of unlawful retaliation. *Id.* To rebut the presumption, the employer must articulate a legitimate and nondiscriminatory reason for the action. *All Purpose Nursing Service v. Illinois Human Rights Comm'n*, 205 Ill. App. 3d 816, 827 (1990). If the employer articulates such a reason, the burden then shifts back to the employee to prove, by a preponderance of the evidence, that the legitimate reasons offered by the employer were a pretext for discrimination. *Id.* This burden may be met by showing the employer's proffered reason is "unworthy of belief." *Id.*

¶ 33   Here, the record shows that the Commission's decision sustaining the Department's dismissal based on a lack of substantial evidence was not an abuse of discretion. Petitioner's first allegation was that she received a verbal reprimand on March 26, 2018, in retaliation for engaging in protected activity when she made the complaint on October 20, 2017, alleging Durley created a hostile work environment. However, as the Commission found, there was no evidence to show that the verbal reprimand was materially adverse. Nothing in the record shows that petitioner's employment was affected by the reprimand in any way. Thus, it cannot be said that the reprimand would have dissuaded a reasonable worker from making or supporting a charge of discrimination.

See *Hoffelt*, 367 Ill. App. 3d at 635. Accordingly, the Commission did not abuse its discretion in finding that petitioner's claim regarding the verbal reprimand did not establish a *prima facie* case of retaliation and sustaining the dismissal for lack of substantial evidence.

¶ 34    Petitioner's second claim was that she was discharged in retaliation for making the October 20, 2017, complaint regarding the hostile work environment created by Durley's behavior toward her. Assuming *arguendo* petitioner did state a *prima facie* case for retaliatory discharge, Continental rebutted the presumption of unlawful retaliation by articulating a legitimate and nondiscriminatory reason for the action; specifically, that petitioner's work performance had failed to meet its expectations.

¶ 35    Continental's Standards of Work Conduct policy, which petitioner received and acknowledged when she was hired, stated that leaving assigned routes for unauthorized reasons would result in disciplinary action and could lead to immediate termination. When Mairson, the general manager, ran GPS reports on all drivers for two days, the GPS reports generated for petitioner's shuttle bus showed she spent up to 27 minutes at individual stops on her route and had been parked in an unauthorized area for three and a half hours of her seven-hour shift on the first day and similar conduct on the second day, all of which violated Continental's requirements for its shuttle bus drivers. Moreover, other employees had been similarly discharged between August 2017 and June 2018 for going off-route and/or in unassigned areas. This evidence shows a legitimate reason for petitioner's discharge, and petitioner failed to present evidence that this reason was pretextual and/or "unworthy of belief." See *All Purpose Nursing Service*, 205 Ill. App. 3d at 827. Accordingly, the Commission did not abuse its discretion in finding petitioner's claim of retaliatory discharge was properly dismissed for lack of substantial evidence.

¶ 36                                CONCLUSION

¶ 37    For the foregoing reasons, we affirm the decision of the Commission.

¶ 38    Affirmed.